The People of the State of New York ex rel. Joseph T. Hahn, Respondent, against Larry Haines, Appellant, et al., Defendants.

First Department, March 14, 1956.

*Abraham Wilson* of counsel (*Kadel, Wilson & Potts,* attorneys), for appellant.

*E. F. W. Wildermuth* of counsel (*Michael F. Horgan* with him on the brief; *Michels, Stack & Horgan,* attorneys), for respondent.

FRANK, J. This is an appeal in a habeas corpus proceeding from two orders entered at Special Term. While three defendants are named in the title, only one, Larry Haines, appears to have been served and he is the only appellant. The first order denied the defendant's motion pursuant to section 237-a of the Civil Practice Act to dismiss the proceedings for lack of jurisdiction, and the second order granted custody of the infant to the relator, who is its father. He and the mother of the infant, both resident in Westchester County, were married on March 30, 1955. At that time the relator was twenty years of age and the mother was eighteen. On August 8, 1955, both parents signed a paper purporting to consent to the adoption of the child, then unborn, by the defendant and his wife, whom they did not know. On September 16, 1955, the child was born, and two days later, without seeing it, the mother was discharged from the hospital. On September 21, 1955, both parents signed an acknowledged document of consent to the adoption.

On October 1, 1955, the defendant and his wife, who previously thereto had resided in New York City for a period of years, took occupancy of a house in Westport, Connecticut, under a lease which will expire on June 1, 1956. At the same time they sublet their New York City apartment for a like period.

Thereafter, the defendant consulted counsel in Connecticut for the purpose of commencing adoption proceedings in that

State. On or about October 26, 1955, a paper signed by the four adults involved, and entitled, "Regular Agreement of Adoption" was filed in the Probate Court for the District of Westport. The relator admitted that he and his wife also signed a document termed an "Application for Approval of Adoption Agreement or Declaration", by which all four applied to the Probate Court to approve the adoption and severally waived notice of hearing thereon.

Thereafter, and on or about December 15, 1955, the relator and his wife demanded the return of their infant daughter. Upon the refusal of the defendant and his wife to yield, a writ of habeas corpus issued by a Justice of the Supreme Court, Westchester County, was served upon the defendant on January 12, 1956. The defendant interposed an oral special appearance to challenge the jurisdiction of the court to "entertain this writ." A hearing was held on that preliminary issue and on January 30, 1956, the court filed an opinion dismissing the writ on the sole ground of lack of jurisdiction.

The record discloses that no formal order was entered on that decision and no appeal was taken therefrom. Instead, the relator applied for and obtained the issuance of another writ dated February 3, 1956, and made returnable before the Supreme Court, New York County, at Special Term, Part XII. A hearing was held upon the adjourned return date of the second writ and subsequently the orders were entered from which this appeal is taken.

The policy of the State of New York with respect to adoptions is partially expressed in certain legislative requirements, one of which states: "no order of adoption shall be made until such child has resided with the foster parents for at least six months unless the judge or surrogate in his discretion shall dispense with such period of residence" (Domestic Relations Law, § 112, subd. 7).

Another provides that the petition must recite, "the religious faith of the foster child and his parents" (§ 112, subd. 2).

That there is a consistency in this policy also appears from the provision for adoptions applicable to authorized agencies (§ 113) pursuant to which the judge or Surrogate, "when practicable must give custody only to persons of the same religious faith as that of the foster child".

There cannot be, and perforce there should not be any judicial disagreement with the declared State policy with respect to adoptions.

Several vital issues were presented in both habeas corpus proceedings. We do not, however, on this appeal reach the

questions of fact and law or the merits of the controversy as raised by the litigants. While it is, therefore, unnecessary to summarize all of these, the question of jurisdiction requires brief discussion. The child is now, and has been, since a week or two after birth, maintained by the defendant and his wife in the State of Connecticut. The residence in Connecticut existed long before the institution of the first proceeding. The relator urged in the New York County hearing that the alleged Connecticut residence is a fraud on him and on New York State for, he claims, it was established to avoid the six-month provision of our statute. Three consents to the adoption were executed by the relator and his wife, the last one after he attained his majority. The relator urges that these consents were obtained in consequence of the defendant's failure to make full disclosures of the circumstances, and at a time when the relator and his wife were incapable of free consent.

The defendant contends before us, as he did in the court below, that the New York County proceeding was *res judicata* in view of the prior one in Westchester County. The relator counters by asserting that new issues were raised in the New York County application that were not present in the Westchester County proceeding. Pointing specifically to paragraphs numbered 32 to 38 and 57 of the petition now under consideration, he contends that the issue of fraud was not raised in the hearing in Westchester County.

With this view we cannot agree. The minutes of the hearing in Westchester County disclose the following: '' Mr. Wildermuth: Well, your Honor, the writ commands the production of the infant, and I think the writ has to be obeyed. Furthermore, it is quite clear from the facts that the defendants here had planned at the time of the delivery of the baby in the State of New York to them, to take it from the jurisdiction of this state.''

It thus appears that although the original petition may not have set forth the allegations contained in the subsequent one, the issue was presented, and if the hearing had proceeded to the point where the court found that it had jurisdiction, a date would have been fixed for a further hearing.

The Civil Practice Act (§ 1234, subd. 7), in part, provides that a petition for a writ must recite all prior applications and their dispositions. It must state whether an appeal has been taken from any prior order and any new facts not previously shown. Upon failure to plead any of these requirements, the writ may be vacated.

While the New York County petition incorporates the opinion of the Justice in the Supreme Court, Westchester County, it does not allege that any order was made thereon or that an appeal was taken. Obviously, it could contain no such recitals because no order was entered and no appeal taken. The proceeding in Westchester County was not continued to completion. Instead, as heretofore indicated, a new petition was drawn and another writ was obtained returnable in New York County.

We cannot give sanction to such procedural conduct.

Distinction must be made between a writ of habeas corpus involving the restraint of a prisoner, which is commonly referred to as a criminal writ, and one which involves the custody of an infant (*People ex rel. Lawrence* v. *Brady,* 56 N. Y. 182; *Matter of Quinn,* 2 App. Div. 103). We are considering only the latter.

More than a hundred years ago, the Court of Errors held that " If a final adjudication upon a habeas corpus is not to be deemed *res adjudicata,* the consequences will be lamentable. This favored writ will become an engine of oppression, instead of the writ of liberty." (*Mercein* v. *People ex rel. Barry,* 25 Wend. 64, 100.)

The Supreme Court of this department in 1878 stated (*Matter of Price,* 12 Hun 508, 511–512) : " If the position taken in support of this appeal should be sustained, then nothing would prevent the trial of the controversy before every Special Term in the State, and even that would not necessarily result in any obligatory adjudication as to either of the parties. Each might in the same manner assail what might be adjudged in favor of the other, and the question as to the legal custodian of the child could only become settled by the exhaustion of one or both of the parties. Such a practice would justly scandalize the administration of the law, by fostering endless legal controversies concerning the same state of facts."

While it appears, therefore, that an order in a habeas corpus proceeding involving custody may, in some circumstances, constitute *res judicata* (*Matter of Lee,* 220 N. Y. 532, 538), we do not here pass upon that question because, as already stated, there is no final adjudication with respect to custody either in Westchester County or in Connecticut.

The Court of Appeals in *Matter of Lee* (*supra,* p. 539), calling attention to the problem with which we are concerned, stated: " The Supreme Court and the Surrogate's Court have concurrent jurisdiction in many respects, and the seemly administration of the law demands that their orders do not conflict."

This court has heretofore held that, " Orderly administration

would require on subsequent successive applications in the same habeas corpus proceeding an affirmative showing of a change in circumstances." (*People ex rel. Glendening* v. *Glendening,* 259 App. Div. 384, 387.) In *Matter of Brock* (245 App. Div. 5, 13) the court stated that, " Seemly and orderly administration of the law requires that habeas corpus proceedings, or a duplicative petition to the Supreme Court with the same objective, should not be entertained by any court with respect to the custody of the infant here concerned, in the absence of an affirmative showing that there has been a change in circumstances relating to that infant since the order  *  *  *  was made ".

Assuming *arguendo* that Special Term in New York County had taken a position similar to that arrived at in Westchester, could this relator then have proceeded to obtain a writ in another county? We think not.

In the efforts of the State to serve as *parens patriæ* and protect its wards, the use of the habeas corpus writ has proven to be an eminently effective procedure in determining proper custody of infants. To permit a relator, unhappy after an adverse intermediate ruling, to ignore it and proceed to shop from county to county or from judicial district to judicial district in an effort to attain a favorable ruling converts the use of this process into abuse.

The relator is not without relief in following orderly process. In addition to other means of relief available to him, he may make any further application as he may be advised in the proceeding still pending in the Supreme Court of Westchester County on additional facts or otherwise, or he may enter an order in that court and appeal therefrom.

The order sustaining the writ should be reversed and the writ dismissed without prejudice to any other proceedings relator may be disposed to bring as above indicated, and the appeal from the order denying the motion to dismiss the proceeding on the ground of lack of jurisdiction, therefore, becomes moot.

PECK, P. J., BREITEL, RABIN and BERGAN, JJ., concur.

Order sustaining writ unanimously reversed and the writ dismissed without prejudice to any other proceedings relator may be disposed to bring in accordance with the opinion herein, and the appeal from the order denying the motion to dismiss the proceeding on the ground of lack of jurisdiction, having become moot by reason of the dismissal of the writ, is dismissed. [See *post,* p. 878.]