Winthrop J. ALLEGAERT, Trustee in Bankruptcy for duPont Walston, Inc., Plaintiff,

v.

Lynn W. WARREN and Oreta C. Warren, Defendants.

No. 79 Civ. 953.

United States District Court, S. D. New York.

Nov. 27, 1979.

818

Robert J. Poulson, Jr., New York City, for plaintiff.

Edith Blumberg, New York City, for defendants.

SOFAER, District Judge:

This case is before the court on defendants' motion to dismiss, or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404. Plaintiff, the trustee in bankruptcy for duPont Walston, Inc., alleges in his complaint that, prior to December 10, 1973, the defendants, residents of California, employed duPont Walston as their

stockbroker and agent to purchase and sell stock or securities for their account. On or about December 10, 1973, duPont Walston, pursuant to defendants' instructions, purchased 5000 shares of Fidelity Mortgage Investors for defendants' account for an aggregate price of $53,157.80. Defendants refused to remit payment for the shares. DuPont Walston thereafter sold the shares in the open market at an aggregate price of $39,211.95, thereby incurring a loss of $13,945.85. (Complaint ¶¶ 5–7) On December 20, 1973, defendants executed a promissory note for that amount. (Complaint ¶ 11)

Plaintiff seeks recovery of the $13,945.85 in three separate causes of action. The complaint alleges that defendants, in violation of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission, did not intend to pay for the shares if the price of the shares declined between the date of purchase and the date payment was due. (Complaint ¶ 9) The second cause of action is for breach of contract. (Complaint ¶¶ 5–7) The third is for failure to pay the promissory note when due. (Complaint ¶ 11) Plaintiff alleges jurisdiction based on Section 27 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa.

■ Defendants present two arguments on their motion to dismiss. They claim, first, that plaintiff has failed to establish in personam jurisdiction. They contend that plaintiff has not stated a claim under Section 10(b) and Rule 10b–5 and that nationwide service of process provided by the Securities and Exchange Act is therefore unavailable. Defendants argue that plaintiff must instead rely on diversity of citizenship to vest subject matter jurisdiction in this court and, consequently, on the New York long arm statute, C.P.L.R. § 302, to establish in personam jurisdiction. They contend that the requirements of that statute have not been met.[1]

---

1. Despite defendants' apparent concession of diversity jurisdiction, diversity of citizenship is not pleaded in the complaint. See F.R.Civ.P. 7(a); 13 Wright, Miller & Cooper, Federal Practice and Procedure § 36 (1975). And, diversity cannot be inferred since there is no allegation of defendants' current citizenship. Id. at § 3608.

Defendants' initial premise is incorrect. In *A. T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir. 1967), the Second Circuit held that a stockbroker's allegation that defendant had placed orders to purchase securities with an intent to pay plaintiff only in the event that the market value of the securities increased by the date payment was due, was sufficient to state a claim under Section 10(b) and Rule 10b–5. That is precisely the allegation made here. Plaintiff, having stated a cognizable securities claim, may avail himself of nationwide service of process in both the federal and pendent claims. *See, e. g., Mariash v. Morrill*, 496 F.2d 1138, 1142–43 (2d Cir. 1974).

Defendants' contention that the securities claim is a mere "federal gloss" and is "too insubstantial to support utilization of 15 U.S.C. § 78aa as a basis of in personam jurisdiction" must also be rejected. At this stage, plaintiff need only state a claim upon which relief can be granted. As Chief Judge Kaufman recognized in *Brod*, 375 F.2d at 398, plaintiff's federal claim may yet fall, before trial, in a motion for summary judgment.[2] But on this motion, the pleadings must be accepted as true, with all attendant consequences, including the assertion of nationwide in personam jurisdiction.[3]

Defendants' other, and primary, argument on their motion to dismiss is that all three causes of action are barred by California's statute of limitations.[4] Defendants properly concede that if New York's longer limitations period applies, the action is timely.[5]

When a federally created right is being enforced, in the absence of a congressionally mandated limitations period, a federal court must look to the law of the forum, including its borrowing statute, for the applicable statute of limitations. *E. g., Cope v. Anderson*, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); *Sack v. Low*, 478 F.2d 360, 365 (2d Cir. 1973); *Korn v. Merrill*, 403 F.Supp. 377, 383 (S.D.N.Y.1975), *aff'd*, 538 F.2d 310 (2d Cir. 1976).[6] The same rule is applicable to pendent, state created rights. *See Gee v. CBS, Inc.*, 471 F.Supp. 600, 641 (E.D.Pa.1979) (application of forum's statute of limitations); *Entertainment Events, Inc. v. Metro-Goldwyn-Mayer, Inc.*, slip op., 74 Civ. 2959 (S.D.N.Y. May 31, 1979); *Sharp v. Coopers & Lybrand*, 457 F.Supp. 879, 885 (E.D.Pa.1978); *Schmidt v. Interstate Federal Savings and Loan Assn.*, 23 F.R.Serv.2d 473, 447 (D.D.C.1977) (federal court applies conflicts law of forum to pendent claims).

New York's borrowing statute, C.P.L.R. § 202, provides:

---

2. If the federal claim is dismissed on such a motion, grounds would exist to dismiss the state claims as well. *See, e. g., United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Braunstein v. Laventhol & Horwath*, 433 F.Supp. 1077 (S.D.N.Y.), *aff'd*, 573 F.2d 1288 (2d Cir. 1977).

3. Defendants' reliance on *Kavit v. A. L. Stamm & Co.*, 491 F.2d 1176 (2d Cir. 1974), in pressing their "federal gloss" argument seems misplaced. In that case, Judge Friendly questioned the assertion of pendent jurisdiction in a situation in which the state claims were subject to arbitration and in which the 10b–5 cause of action should have been dismissed for failure to state a claim. Defendants do not directly challenge the pendent jurisdiction here. Even if they did, we could not say, at this point, as Judge Friendly did in *Kavit*, that the federal claim is "flimsy." This conclusion is buttressed by Judge Friendly's discussion of the *Brod* case. 491 F.2d at 1182. In addition, plaintiff has presented some evidence that de-

fendants' actions were part of a wider fraudulent scheme. (Poulson Aff. ¶¶ 3–5) A challenge to the pendent jurisdiction in this case might more appropriately be considered after more facts concerning the securities claim are developed in discovery.

4. California has a two-year limitation on breach of oral contract actions, Cal.Code of Civ.Proc. § 339, a four-year limitation on actions on promissory notes, *id.* § 337(1), and a three-year limitation on fraud actions, *id.* § 338(4).

5. New York applies a six year limitation to each cause of action. C.P.L.R. §§ 213(2) and (9).

6. In Section 10(b) cases in which a foreign limitations period is not borrowed, New York's six-year common law fraud statute of limitations is applicable. *E. g., Phillips v. Levie*, 593 F.2d 459 (2d Cir. 1979).

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

Thus, New York will borrow the limitations law of a foreign state only where (1) the cause of action accrued outside of New York, *and* (2) the plaintiff is not a resident of New York. If either of these conditions is not met, the New York statute of limitations will apply. The parties agree, with good reason, that the causes of action alleged by plaintiff accrued in California. The question confronting the court, therefore, is whether the plaintiff's predecessor was a resident of New York within the meaning of C.P.L.R. § 202.[7]

DuPont Walston was incorporated in Delaware and maintained its principal place of business in New York. In *American Lumbermens Mutual Casualty Co. of Illinois v. Cochrane*, 129 N.Y.S.2d 489 (Sup.Ct.N.Y. Co.), *aff'd without opinion*, 284 A.D. 884, 134 N.Y.S.2d 473 (1st Dep't 1954), *aff'd without opinion*, 309 N.Y. 1017, 133 N.E.2d 461 (1956), the court held that an Illinois corporation qualified to do business in New York and maintaining an office in New York City was not a resident within the meaning of C.P.L.R. § 202. Defendants contend that *American Lumbermens Mutual Casualty* is dispositive of the instant mo-

tion. On its facts, however, that case stands for the proposition that a foreign corporation cannot take advantage of the borrowing statute simply because it is qualified to do business in New York and maintains an office in the state. *See* 1 Weinstein, Korn & Miller, *New York Civil Practice* ¶ 202.03 (1978); McLaughlin, "Practice Commentaries," *McKinney's Consolidated Laws of New York*, C.P.L.R. § 202, C 202:2 (1972). Here, in contrast, New York was plaintiff's predecessor's *principal* place of business.[8] The primary purpose of the borrowing statute is to protect New York residents by preventing foreign plaintiffs from forum shopping, *see, e. g., Sack v. Low, supra,* 478 F.2d at 367 (2d Cir. 1973), while at the same time insuring New York residents the benefits of a longer New York statute of limitations, *see* Weinstein, Korn & Miller, *supra* at ¶ 202.01. There is no reason not to extend these protections to a corporation having its principal home in New York merely because it is incorporated in a foreign state. Indeed, the converse is true. Plaintiff's predecessor chose New York as its business center. Such a corporation is not forum shopping simply because it avails itself of a court in New York. Moreover, New York has a strong interest in extending to corporations maintaining their principal offices here the benefits— economic or otherwise—of a longer statute of limitations. Strong policy considerations therefore support the conclusion that plaintiff's predecessor should be treated as a resident under C.P.L.R. § 202, and the New York statute of limitations should apply.

---

7. Although this action is brought by the trustee in bankruptcy, the language of § 202 indicates that the relevant inquiry is the residence of duPont Walston at the time the causes of action accrued. *See U. S. Fidelity and Guarantee Co. v. E. W. Smith Co.*, 46 N.Y.2d 498, 414 N.Y.S.2d 672, 387 N.E.2d 604 (1979).

8. Defendants, relying on the first sentence of the dissent in the Appellate Division, 134 N.Y. S.2d at 474, claim that the plaintiff in *American Lumbermens Mutual Casualty* also had its principal office in New York. At best, that was a disputed question in the New York courts. The trial court's opinion is clear that plaintiff maintained only an office in New York, and there is no reason to assume that the majority in the

Appellate Division found anything to the contrary. Indeed, the reported synopsis of the case in that court refers only to a corporation "qualified to do business in New York and which maintained an office in New York." 134 N.Y.S.2d at 473. And even the dissent was written in broad enough terms to include a corporation merely doing business in New York within the meaning of "resident." At oral argument, the court asked defendants to furnish the record and briefs in *American Lumbermens Mutual Casualty* to support their reading of the case. The record has not been furnished, nor have defendants come forward with any explanation for the failure to supply the requested papers.

Defendants move in the alternative for a transfer of venue to the Eastern District of California pursuant to 28 U.S.C. § 1404(a). Section 27 of the Securities and Exchange Act of 1934 provides that a suit to enforce liability under the Act may be brought in the district where "any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa. To establish venue in this district, it is not necessary to allege that the fraudulent scheme was hatched here. It is enough that an important step in the consummation of that scheme occurred in this forum. *See, e. g., Hilgeman v. National Insurance Co. of America,* 547 F.2d 298, 301 (5th Cir. 1977); *Mariash v. Morrill, supra,* 496 F.2d at 1144–45; *Hooper v. Mountain States Securities Corp.,* 282 F.2d 195, 204–05 (5th Cir. 1960), *cert. denied,* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). Although the defendants' order to buy was issued in California, duPont Walston maintained its trading department in New York City. The stock at issue was purchased (and sold) in New York. That purchase was necessary to consummate the fraudulent scheme and was therefore sufficient to establish venue in this district. *See Hilgeman v. National Insurance Co. of America, supra.*

In urging that the court transfer this case, defendants argue that important witnesses, other than themselves, may reside in California and that some documentary evidence is located there. Plaintiff trustee in bankruptcy, a New York resident, counters that all of duPont Walston's records are in New York and that the only California residents who are likely to be witnesses are the defendants. This motion is, of course, addressed to the discretion of the court. *See generally,* 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3847 (1976). Defendants have not made a convincing showing that plaintiff's choice of forum should be disturbed. The allegations in this case do not appear to require extensive or complicated discovery. Any inconvenience to defendants will be substantially reduced by requiring their depositions and the depositions of any other California residents to be taken in California. *See* F.R.Civ.P. 45(d)(2).

Accordingly, the defendants' motion to dismiss or transfer venue is denied, but plaintiff is to take all depositions of California residents, and to conduct all other related discovery, in California, unless defendants agree to some other arrangement.

SO ORDERED.