Marianne THORN, on her own behalf and as parent and legal guardian of Stanley Bethea, a minor, Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES, Blanche Bernstein, individually and as Commissioner of The New York City Department of Social Services, Beverly Sanders, individually and as Assistant Commissioner of the New York City Department of Social Services, St. Vincent's Hall, Inc., and Mary Alicia Hatton, individually and as caseworker of St. Vincent's Hall, Inc., Defendants.

Stanley BETHEA, by his mother and natural guardian, Marianne Thorn, Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF SOCIAL SERVICES, and St. Vincent's Hall, Inc., Defendants.

Nos. 81 Civ. 2543, 81 Civ. 2760.

United States District Court, S. D. New York.

Oct. 6, 1981.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants, New York City Dept. of Social Services, Bernstein and Sanders; Robert Bergen, and Leslie K. Shedlin, New York City, of counsel.

Clune, White & Nelson, Harrison, N. Y., for defendants, St. Vincent's Hall, Inc., and Hatton.

## OPINION AND ORDER

SOFAER, District Judge:

These actions are brought by a mother and her nine-year-old son against New York child-welfare and foster-home personnel. In the mother's suit, *Thorn v. New York City Dep't of Social Services*, 81 Civ. 2543, defendants have moved to dismiss plaintiff's federal civil rights claims and pendent state claims as time-barred.[1] Alternatively, the individual municipal defendants seek summary judgment on the merits. Defendants' motion to dismiss is granted only insofar as it relates to plaintiff's state claim for intentional infliction of emotional harm. All of defendants' other motions in *Thorn* are denied. In *Bethea v. New York City Dep't of Social Services*, 81 Civ. 2760, brought on behalf of the child, defendants have moved pursuant to Rule 12(b)(6) to dismiss; all those motions are denied.

### I. *Background*

Plaintiffs allege that in 1974, plaintiff Thorn placed her son, Stanley Bethea, in temporary foster care with defendant New York City Department of Social Services ("DSS") pursuant to a written agreement with DSS. DSS in turn contracted with defendant St. Vincent's Hall, Inc., to provide care and supervision for the child. Mrs. Thorn subsequently moved to Philadelphia. Her son remained in foster care until

Norman Siegel, New York City, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for plaintiffs; Carolyn A. Kubitschek, New York City, Carl G. Roberts, Philadelphia, Pa., of counsel.

---

1. Municipal defendants' motion to dismiss for failure to state a claim is untimely under Rule 12(g), because they previously made a Rule 12(b)(3) motion objecting to venue in the Eastern District of Pennsylvania. Nevertheless, this Court will entertain the motion because it was not interposed for delay, and its consideration will expedite the disposition of the case on the merits. *See* 2A J. Moore & J. Lucas, Moore's Federal Practice § 12.22 at 2444 (2d ed. 1981). Defendant St. Vincent's Hall's motion is timely because it made no prior 12(b) motion; therefore, the same issues raised by the municipal defendants' motion must in any event be resolved at this time.

September 16, 1977. Stanley then rejoined his mother in Philadelphia, and stayed with her for thirty-five days. On October 21, 1977, defendant Hatton (a St. Vincent's caseworker) went to Philadelphia and—without either plaintiff's consent and over Mrs. Thorn's objections—removed the child from his mother and returned him to New York, where he was placed in a foster home. Defendants allegedly detained the child illegally for six months. During that period, Mrs. Thorn and her attorney made repeated requests that the boy be returned. Defendants allowed Stanley to stay with his mother temporarily as of April 18, 1978. On May 18, 1978, the New York City Family Court ordered that the child be permanently returned to Mrs. Thorn's custody.

Mrs. Thorn commenced her suit on October 14, 1980, in the United States District Court for the Eastern District of Pennsylvania. She alleged that defendants' removal and detention of her son violated her constitutional rights, 42 U.S.C. § 1983 (1976), and was tortious under state law. Municipal defendants (DSS, Bernstein, and Sanders) filed a Rule 12(b)(3) motion, arguing alternatively that venue was improper under 28 U.S.C. § 1391(b) (1976), and that a forum non conveniens transfer was appropriate under 28 U.S.C. § 1404(a) (1976). The district judge ruled that venue did lie in the Eastern District of Pennsylvania, but nevertheless granted a transfer to this Court under § 1404(a). *Thorn v. New York City Department of Social Services*, No. 80–4032, (E.D.Pa. March 20, 1981) (Memorandum & Order).

Plaintiff Bethea originally commenced his suit in the Supreme Court of the State of New York, County of New York, on April 17, 1981. He alleged that defendants' actions violated his rights under the constitutions of the United States and the State of New York, and violated certain statutory obligations defendants owed to him under state law. Further, Bethea alleged that

defendants' conduct was tortious, and breached contractual obligations owed to him as third-party beneficiary of the alleged contract for foster care entered into by his mother and defendant DSS. Defendants petitioned this Court for removal of the action on the basis of federal-question jurisdiction, and plaintiff did not oppose removal.

## II. The Motions in Thorn

### A. Timeliness of the Section 1983 Claims

■ *Thorn* was transferred to this Court pursuant to § 1404(a). Consequently, in determining the timeliness of Mrs. Thorn's section 1983 claims, this Court must resolve the issue as it would have been resolved by the original forum, the Eastern District of Pennsylvania. *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964).

Because section 1983 contains no statute of limitations, a federal court must apply the most appropriate statute of limitations "of the State wherein the court having jurisdiction of such . . . cause is held." 42 U.S.C. § 1988 (1976); *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *Pauk v. Board of Trustees*, 654 F.2d 856, 861 (2d Cir. 1981). The parties agree that the most appropriate Pennsylvania statute of limitations should govern.[2] They disagree about which of Pennsylvania's statutory provisions is most appropriate.

■ Unlike New York, which has adopted a single limitations period held applicable to all section 1983 actions, *Pauk v. Board of Trustees, supra*, Pennsylvania does not have a statutory provision expressly or impliedly applicable to such claims. Accordingly, "[s]election of the appropriate forum state statute of limitation requires characterization of the essential nature of the federal claim within the scheme created

---

**2.** It might have been argued that Pennsylvania would apply its borrowing statute to this case, and thereby apply New York's statute of limitations. For the reasons stated below in part II.(B), this Court agrees with the parties that

Pennsylvania's borrowing statute, 42 Pa.Con. Stat.Ann. § 5521(b) (Purdon 1981), does not require application of New York limitations rules.

by the various state statutes of limitation." *Davis v. United States Steel Supply*, 581 F.2d 335, 337 (3d Cir. 1978). Pennsylvania law specifies particular limitations periods for various types of actions; if an action is not subject to one of these particular limitations, then the residual six-year period applies. 42 Pa.Con.Stat.Ann. § 5527(6) (Purdon Supp.1981). Thus, the issue is not—as defendants perceive it—into which of the particular provisions this action can be pigeonholed, but rather, whether any of the shorter provisions can fairly be said to apply; if not, the residual period governs.

Defendants invoke Pennsylvania's two-year limitations provision:

The following actions and proceedings must be commenced within two years: (1) An action for assault, battery, false imprisonment, false arrest, malicious prosecution or malicious abuse of process. (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

42 Pa.Con.Stat.Ann. § 5524 (Purdon Supp. 1981) (¶¶ (3)–(6) omitted).

Determining whether this provision applies depends on the essential nature of Mrs. Thorn's section 1983 grievance, and finding its closest analogue in state law. The Third Circuit, whose precedents bind us under *Van Dusen*, directs that, in characterizing the essence of the federal claim, "we look to the complaint's factual allegations concerning defendant's conduct and plaintiff's injury and its requested relief." *Davis v. United States Steel Supply, supra*, 581 F.2d at 338. The complaint alleges two types of violations under section 1983: a denial of procedural due process, and abridgement of substantive rights of familial association. These claims cannot reasonably be encompassed by either provision of section 5524.

Of the six intentional torts specified in the first provision of section 5524, four have nothing in common with this suit: assault, battery, malicious prosecution, and malicious abuse of process. The torts of false arrest and false imprisonment bear similarity to the taking of plaintiff's son, and defendants argue that these are the closest state-law analogues to this suit. But both of these torts protect the interests of the person arrested or imprisoned. Plaintiff Thorn does not assert a "personal interest in freedom from restraint of movement," W. Prosser, Handbook of the Law of Torts § 11, at 42 (4th ed. 1971), which is the gravamen of these torts. Rather, she complains of defendants' alleged interference with her custody of her son. There is a direct analogue to this complaint, with respect to all three factors considered relevant by the Third Circuit, in the common law of Pennsylvania: the tort that protects a parent against the abduction of her child, and provides her an action for damages against the abductor. *Moritz v. Garnhart*, 7 Watts, Pa. 302 (1838).[3] The Pennsylvania legislature could have included abduction in section 5524(1)'s litany had it wished to impose on such actions a two-year limitations period. It did not. Instead, as with such torts as fraudulent interference with contractual rights, wrongful interference with another's business, violation of seniority rights, and breach of an express trust, *see Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 902 (3d Cir. 1977), it chose to omit it. Consequently, because abduction does not "fall within the precise terms" of section 5524(1), *Davis v. United States Steel Supply, supra*, 581 F.2d at 338, plaintiff's section 1983 claims are not subject to the two-year limit imposed by that subsection.

Section 5524(2) is also inapplicable. No published opinion in Pennsylvania spe-

---

3. Although the courts of Pennsylvania have not had occasion in recent years to enforce this common law right, they have explicitly recognized a right in the natural parent, good against the world, to custody of her child, *Commonwealth v. McCue*, 165 Pa.Super. 49, 51, 67 A.2d 582, 583 (Pa.Super.1949) (*citing Moritz*), and have reaffirmed the *Moritz* decision itself in dicta, *Commonwealth v. Hyman*, 164 Pa.Super. 64, 63 A.2d 447 (1949); *Renovich v. Bethlehem Mines Co.*, 131 Pa.Super. 351, 200 A. 122, 123 (1938).

cifically addresses the question whether the tort of abduction falls within "the limited compass," *Meyers v. Pennypack Woods, supra*, 559 F.2d at 902, of that subsection, or whether it properly falls within the broader six-year residual provision, section 5527(6). The Third Circuit has, however, repeatedly limited section 5524(2) and its predecessors to "actions for bodily injury." *Davis v. United States Steel Supply, supra*, 581 F.2d at 338; *Meyers v. Pennypack Woods, supra*, 559 F.2d at 902. Plaintiff's section 1983 claims do not involve bodily injury, and neither is bodily injury a necessary element of abduction in the ordinary case. Further, the injury alleged, like that in *Meyers*, is "the actual denial of [plaintiff's] right to lawfully pursue [her] business, employment, or personal affairs." *Id.* In Pennsylvania, a parent's action for abduction of her child developed from an action for the loss of the services of one's servant. *Moritz v. Garnhart, supra*, 7 Watts, Pa. at 303. The tort therefore sounds in deprivation of an economic interest in its origin. While the court in *Moritz* stated that the "servitude" involved was "almost fictitious", *id.* at 304, the fact is—and plaintiff alleges—that the loss of a child may well amount to a major economic loss and in any event disrupts the most fundamental of our society's economic units—the family. Further, given New York State procedures governing payment for foster care services obtained for children from authorized agencies, it is not without the realm of possibility that plaintiff will claim that economic considerations figured in defendant St. Vincent Hall's alleged decision to resume custody of plaintiff's son. *See* 18 N.Y.C.R.R. §§ 427 *et seq.* In any case, it is not for this Court to dispute Pennsylvania's characterization of abduction as at root an economic tort. Given that characterization, the Third Circuit would hold that the Commonwealth would apply the six-year residual period of section 5527(6) to this claim, as it does to other interferences with business, employment or personal affairs. *See Davis, supra*, 581 F.2d at 341; *Meyers, supra*, 559 F.2d at 902. Under the six-year statute the federal claims were timely filed. Defendants' mo-

tion to dismiss those claims pursuant to Rule 12(b)(6) is denied.

## B. Pendent State Claims

Defendants appear to seek dismissal of Mrs. Thorn's pendent state claims on two grounds. First, defendants contend that plaintiff failed to comply both with the notice-of-suit requirement of General Municipal Law (New York) § 50–e and with the one-year-and-ninety-day limitation period of General Municipal Law § 50–i. Yet defendants fail to establish that these provisions of New York law should govern here. As stated above, this Court must resolve the issue as it would have been resolved by the original forum, the Eastern District of Pennsylvania. The Eastern District of Pennsylvania would look to the law of the forum state, including its borrowing statute, for the applicable statute of limitations. *Guaranty Trust Co. v. York*, 326 U.S. 99, 110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945); *Gee v. CBS, Inc.*, 471 F.Supp. 600, 641 (E.D.Pa.), aff'd 612 F.2d 572 (3d Cir. 1979) (mem.); *Allegaert v. Warren*, 480 F.Supp. 817, 819 (S.D.N.Y.1979). The forum state is Pennsylvania.

 The general rule in Pennsylvania courts, stated in *Freeman v. Lawton*, 353 Pa. 613, 46 A.2d 205 (1946), is to apply the Pennsylvania statutes of limitations even to causes of action created by another state. *Gee v. CBS, Inc., supra*, 471 F.Supp. at 641. Two exceptions exist to this rule, one a matter of Pennsylvania statutory law, the other a general common law principle, but neither applies here. First, 42 Pa.Con.Stat. Ann. § 5521(b) (Purdon 1981), provides that:

> The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim.

The claim did not accrue outside the Commonwealth of Pennsylvania. The removal of plaintiff's child occurred in Pennsylvania and so far as appears plaintiff was in Pennsylvania throughout the period she alleges she was unlawfully deprived of custody of

her son. Thus, Mrs. Thorn suffered the alleged injury in Pennsylvania. Therefore, the Pennsylvania borrowing statute is inapplicable. *See generally, Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.,* 626 F.2d 280, 290 n.23 (3d Cir. 1980); *Mack Trucks, Inc. v. Bendix-Westinghouse Auto, A. B. Co.,* 372 F.2d 18, 20 (3d Cir. 1966). Moreover, defendants insist that Pennsylvania law prescribes the limitations period for section 1983 claims. *See* Municipal Defendants' Reply Memorandum at 9. Because the rule governing choice of the applicable statute of limitations is the same for section 1983 and pendent state claims, *Allegaert v. Warren, supra,* 480 F.Supp. at 819, defendants' argument that the cause of action accrued in New York is doctrinally inconsistent with defendants' position that the statutes of limitations of Pennsylvania apply to the federal claims.

■ Second, it is a general principle at common law that:

> An action will not be entertained in another state if it is barred in the state of the otherwise applicable law by a statute of limitations which bars the right and not merely the remedy.

Restatement (Second) of Conflict of Laws § 143 (1971). It is unclear whether Pennsylvania follows this doctrine, but "rights/remedies" language has surfaced in federal and state decisions on similar issues under Pennsylvania law. *E. g., Gee v. CBS, Inc., supra,* 471 F.Supp. at 641; *Rosenzweig v. Heller,* 302 Pa. 279, 153 A. 346 (1931). Even if Pennsylvania follows the doctrine, it would apply its own statutes of limitations to all the causes of action in this suit. The test for whether the limitation bars the "right" and not the "remedy" is: "Was the limitation 'directed to the ... liability so *specifically* as to warrant saying that it qualified the right?'" *Bournias v. Atlantic Maritime Co.,* 220 F.2d 152, 156 (2d Cir. 1955) (citation omitted, emphasis in original). General Municipal Law §§ 50–e and 50–i are far from specific with respect to the state causes of action herein alleged. Indeed, those sections are directed at barring a remedy solely against a specific class of defendants, and do not operate on any particular cause of action. Consequently, even as to the fourth and eighth counts of the complaint, alleging violations of the New York Constitution and certain New York statutes, Pennsylvania would apply its own limitations statutes. *Cf. Clarke v. Pennsylvania Railroad Co.,* 341 F.2d 430 (2d Cir. 1965) (New York would apply its own limitations period to New Jersey statute).

■ With the exception of plaintiff's claim for intentional infliction of emotional harm, plaintiff's state claims are governed by the residual six-year limitation of Pa. Con.Stat.Ann. section 5527(6). They do not come within § 5524(2) because, as stated above, that section is limited to actions for redress of bodily injury, which is not an element of those counts. Although plaintiff alleges emotional suffering as an element of damages in each of those counts, "the thrust of [her] complaint," *Meyers v. Pennypack Woods, supra,* 559 F.2d at 902, is that defendants interfered with associational rights and failed to afford required procedural safeguards, and therefore unlawfully interfered in her personal affairs. Further, defendants have not argued that 42 Pa.Con.Stat.Ann. section 5522, limiting actions against governmental units, is applicable here. Indeed, that section appears to apply only to actions against governmental units of the Commonwealth of Pennsylvania, and other governmental units within the Commonwealth. The six-year residual period thus governs and the fourth, fifth, seventh and eighth counts are therefore timely filed.

■ Defendants argue, however, that the sixth count, alleging intentional infliction of emotional harm, falls within the two-year limit of § 5524(2). They point out that the Eastern District of Pennsylvania has recently held that this tort is indeed governed by that section. *Wilkinson v. Ellis,* 484 F.Supp. 1072, 1079 (E.D.Pa.1980). The court in *Wilkinson* made no effort to square its ruling with prior Third Circuit precedent, relied on above, stating that § 5524(2) applies only to actions for bodily injury. Nevertheless, that decision seems

correct, and should be followed. "[M]edical science has recognized ... that not only fright and shock, but also grief, anxiety, rage and shame, are in themselves 'physical' injuries, in the sense that they produce well marked changes in the body...." W. Prosser, *supra,* § 12 at 50–51. Accordingly, because the action accrued at the latest when plaintiff's son's detention ended on April 17, 1978, and plaintiff filed this action more than two years later on October 14, 1980, the sixth count is time-barred. Defendants' motion to dismiss under Rule 12(b)(6) is granted only to that extent.

### C. *Summary Judgment*

■ Municipal defendants move for summary judgment in favor of defendants Bernstein and Sanders on the ground that they assumed their offices after plaintiff's son was removed and therefore cannot be personally liable. This motion must also be denied at this time. The rules of this Court require that a summary judgment motion include "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement constitutes grounds for denial of the motion." Civil Rules of the District Court, Rule 3(g). Defendants submitted no such statement, even after their failure to do so was raised by plaintiffs. Moreover, the individual municipal defendants were in office during the period of detention of plaintiff's son, and plaintiff is entitled to conduct discovery to ascertain the extent of their involvement in the alleged violations of her rights.

### III. *The Motions in Bethea*

### A. *Claimed Violations of Constitutional Rights*

Defendants argue that plaintiff Bethea's allegations that defendants' conduct violated his rights under the United States Constitution fail to state a claim upon which relief can be granted; according to defendants, plaintiff seeks to bring "this lawsuit directly under the United States Constitution," rather than under 42 U.S.C. § 1983.

Defendant DSS's Memorandum of Law at 4. The Second Circuit has held that there is no cause of action against a municipality directly under the fourteenth amendment. *Turpin v. Mailet,* 591 F.2d 426 (2d Cir. 1979) (en banc) (per curiam). But the very language defendants rely upon in that opinion defeats their argument: "there is no place for a cause of action against a municipality directly under the 14th Amendment *because the plaintiff may proceed ... under § 1983." Id.* at 427 (emphasis added).

■ Plaintiff Bethea has stated a claim under § 1983. The complaint provides "[a] simple statement in sequence of the events which have transpired, coupled with a direct claim by way of demand for judgment...." *Gins v. Mauser Plumbing Supply Co.,* 148 F.2d 974, 976 (2d Cir. 1945). Defendants recognize that § 1983 is the basis of the constitutional claims, *see* Defendants' Memorandum of Law at 6, objecting only that § 1983 is not explicitly mentioned in the complaint. The statute itself need not be cited in the complaint, "for particular legal theories of counsel yield to the court's duty to grant the relief to which the prevailing party is entitled, whether demanded or not." *Gins v. Mauser Plumbing Supply Co., supra,* 148 F.2d at 976.

### B. *Timeliness of Plaintiff's Claims*

Defendant also maintains that plaintiff's claims are barred by the applicable statutes of limitations. In *Thorn,* because the action was originally filed in the Eastern District of Pennsylvania, the forum state is Pennsylvania, and consequently this Court applies the law of Pennsylvania to determine the periods of limitation appropriate to the claims in that case. But in *Bethea* the forum state is New York, and New York law governs. Consequently, unless the courts of the State of New York would apply the limitations and tolling provisions of another jurisdiction, the appropriate New York limitations period should control here.

Defendants argue that New York's borrowing statute dictates that the limitations

provisions of Pennsylvania be applied. New York CPLR § 202 provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

Under New York law, it appears that plaintiff was technically a resident of Pennsylvania throughout the time period relevant to this action because his mother was a resident of Pennsylvania. *In re Thorne*, 240 N.Y. 444, 148 N.E. 630 (1925); *Application of Hahn*, 149 N.Y.S.2d 140, 144 (Sup.Ct.N.Y. County), *rev'd on other grounds*, 1 App. Div.2d 263, 149 N.Y.S.2d 407 (1st Dep't), *aff'd* 1 N.Y.2d 835, 135 N.E.2d 723, 153 N.Y.S.2d 218 (1956) (per curiam). Consequently, the applicability of the borrowing statute turns on whether the cause of action accrued in New York or Pennsylvania.

District Courts have differed as to the test to be applied under New York law to determine where a cause of action accrues. In some cases, following the Second Circuit in *Sack v. Low*, 478 F.2d 360 (2d Cir. 1973), judges have held that the cause of action accrues where the alleged injury was suffered. *E. g., Posner v. Merrill Lynch, Pierce, Fenner & Smith*, 469 F.Supp. 972, 979 (S.D.N.Y.1979); *Bache Halsey Stuart, Inc. v. Namm*, 446 F.Supp. 692, 696–97 (S.D. N.Y.1978). In others, following *Martin v. Julius Dierck Equipment Co.*, 52 App.Div.2d 463, 384 N.Y.S.2d 479 (2d Dep't 1976), *aff'd* 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978), judges have held that the cause of action accrues in the forum that has more contacts with the action, making it the action's "center of gravity." *E. g. State Teachers Retirement Bd. v. Fluor Corp.*, 500 F.Supp. 278 (S.D.N.Y.1980); *Gluck v. Amicor, Inc.*, 487 F.Supp. 608, 613 (S.D.N.Y. 1980); *Natural Resources Corp. v. Royal Resources Corp.*, 427 F.Supp. 880, 883 (S.D. N.Y.1977). In this case, no need exists to choose between these tests, since under both tests this plaintiff's cause of action accrued in New York.

■ The heart of plaintiff's allegations is that he was unlawfully seized and detained by defendants, and unlawfully deprived for six months of his constitutional rights of familial association. Although he was seized in Pennsylvania, plaintiff spent virtually all his six-months detention in New York. Thus New York is the state in which he suffered the injury, in contrast to his mother's injury, suffered entirely in Pennsylvania. Under the "place of injury" test, therefore, New York would apply its own limitations statute to Bethea's action.

■ The result is no different under the "grouping of contacts," or "center of gravity" test. Under that test, a court must "determine what the essence of the action is and which jurisdiction has the most significant contacts with the issues before the court." *Natural Resources Corp., supra*, 427 F.Supp. at 884 (*quoting Martin v. Julius Dierek Equipment Co., supra*, 52 App.Div.2d at 466, 384 N.Y.S.2d at 482). The essence of the son's action is that, by illegally detaining him for six months, defendants deprived him of: (1) his constitutional right to a family relationship; (2) his constitutional right to liberty; (3) his constitutional right to due process of law; and (4) associated state-created rights including breach of contractual obligations allegedly entered into in New York. Most of the alleged events that give rise to these causes of action occurred in New York. The complaint alleges that plaintiff was placed by his mother in foster care in New York in 1974. During the time plaintiff was in foster care, he was under the supervision of DSS, an agency of the New York City government, and under the direct supervision of defendant St. Vincent's Hall, a New York corporation, with whom DSS contracted to provide care for plaintiff. (Complaint, ¶¶ 4, 7, 10). A variety of New York laws and regulations governed his foster care, some of which form the bases for claims in this case. All of defendants' alleged decisions relevant to returning plaintiff to foster care were

made in New York. (Complaint, ¶¶ 14, 16). Finally, as noted above, plaintiff was in New York throughout his allegedly illegal six-months detention. Against these substantial contacts, defendant urges a single contact with Pennsylvania, the fact that plaintiff was taken from his mother's home in that Commonwealth. Under these circumstances, New York has "the most significant contacts with the issues before the court." *Natural Resources Corp., supra,* 427 F.Supp. at 884 (*quoting Martin v. Julius Dierek Equipment Co., supra,* 52 App.Div.2d at 466, 384 N.Y.S.2d at 482).

New York applies a three-year statute of limitations to all actions under 42 U.S.C. § 1983. *Pauk v. Board of Trustees, supra.* But New York law contains a provision tolling the statute of limitations during a plaintiff's infancy. New York CPLR § 208 provides, in relevant part:

> If a person entitled to commence an action is under a disability because of infancy . . . at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, . . . the time within which the action must be commenced shall be extended to three years after the disability ceases . . . .

According to CPLR § 105(j), an "infant," for the purposes of § 208, is a person "who has not attained the age of eighteen years." Plaintiff alleges that he was born in 1972. Consequently he was an infant at the time the action accrued, and is still an infant. The statute of limitations appropriate to the § 1983 claims will not expire until three years after plaintiff's eighteenth birthday.

██ All of plaintiff's claims, therefore, are timely; even if the applicable limitation for certain state claims is less than three years, under § 208 the limitations period is tolled until plaintiff reaches the age of eighteen.

## C. *The Breach of Contract Claim*

Defendants raise three arguments in moving to dismiss plaintiff Bethea's eighth cause of action, for breach of contract. De-

fendant St. Vincent's Hall argues first that there was no contract, and second that if there was a contract plaintiff was not its third-party beneficiary. Defendant DSS argues that, if there was a contract, there was no breach.

The complaint alleges the following facts relevant to the eighth count. Plaintiff was placed in foster care in 1974 pursuant to a written agreement executed by plaintiff's mother and an employee of DSS. (Complaint, ¶ 7). He was placed in foster care in 1974 "pursuant to a written contract between his mother and defendant DSS." (Complaint, ¶ 57). Plaintiff "was the third-party beneficiary of said contract." (Complaint, ¶ 58). Placement was expressly for temporary foster care and not for adoption. (Complaint, ¶ 8). DSS subsequently placed plaintiff with defendant St. Vincent's Hall pursuant to a written contract between those parties. (Complaint, ¶ 10). St. Vincent's Hall was "the agent of defendant DSS in performance of" the original contract between plaintiff and DSS. (Complaint, ¶ 59). Plaintiff further avers, on information and belief, that the original contract required DSS "to return plaintiff to his mother when she was able to care for Stanley." (Complaint, ¶ 60). Finally, plaintiff alleges that his mother was fit and able to care for him as of October 1977 (Complaint, ¶ 15), and that defendant breached the contract by detaining plaintiff from his mother from October 1977 to April 1978. (Complaint, ¶ 61).

If plaintiff can prove these allegations, he will have established a breach of contract. But defendants argue that, as a matter of law, plaintiff cannot prove his allegations. First, St. Vincent's Hall contends that there was no contract because plaintiff's mother gave no consideration. Memorandum of Law in Support of Defendants St. Vincent's Hall, Inc. and Mary Alicia Hatton Cross-Motion to Dismiss at 8–9. Plaintiff points out, however, that under New York law governing agreements such as that in question, plaintiff's mother assumed obligations, *inter alia,* to visit her child regularly and to plan for plaintiff's future. Social Services

Law § 384–b(7). Further, courts have held that, under New York law, "the consent by a parent to the change of guardianship and custody to an authorized agency for the purpose of adoption or care . . . is a valid contract. . . ." *Application of Handler*, 6 App.Div.2d 977, 978, 176 N.Y.S.2d 689, 691 (Third Dep't 1958).

 St. Vincent's Hall also argues that plaintiff cannot be a third-party beneficiary of the alleged contract, but offers no real support for this contention. Defendant concedes in fact that plaintiff "was intended to, and most probably did, benefit from the collective defendants' assuming of the responsibility for his upbringing." (Memorandum, p. 8). "If the terms of the contract require the conferring of a benefit upon a third person, then such benefit . . . invokes a third party beneficiary right, even though the major motivation for the contract may be the parties' own advantage." *United States v. Jacobs*, 304 F.Supp. 613, 622 (S.D.N.Y.1969). Therefore, as to the existence of a contract, and plaintiff's status as third-party beneficiary under it, it does not "appear to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." 2A J. Moore & J. Lucas, Moore's Federal Practice, ¶ 12.08 at 2274 (2d ed. 1980). Accordingly, plaintiff should be allowed to attempt to prove those allegations.

The state of the law and of the facts is less clear with respect to defendant DSS's argument that, as a matter of law, plaintiff cannot establish a breach of the agreement. DSS argues that, because the agreement did not fix a date upon which plaintiff was to be returned to his mother, Defendants' Memorandum of Law at 11, the burden was on her to commence a proceeding to regain custody of her child. DSS argues that plaintiff's mother never commenced such a proceeding, and that therefore no obligation to return plaintiff to his mother could have arisen.

This issue is novel, complex, and important. Its resolution depends in part upon a careful evaluation of the applicable New York and federal laws and policies, as well as on the practical problems that might be posed by the rules advanced. Given these complexities, the issue has not been adequately briefed at this preliminary stage. One cannot now say with certainty that plaintiff could prove no state of facts that would entitle him to relief. Even assuming that, in general, a parent would have the burden of petitioning for an order establishing his or her fitness to resume caring for a child, plaintiff may be able to show that in this case DSS made a determination, prior to removing plaintiff from his mother in October 1977, that she was fit to care for the child. So far as appears from the memoranda of law on this point, if DSS did so determine, a contractual obligation may well have arisen to return plaintiff to his mother forthwith, under the doctrine of *Spence-Chapin Adoption Service v. Polk*, 29 N.Y.2d 196, 203, 324 N.Y.S.2d 937, 943, 274 N.E.2d 431, 435 (1971) (Breitel, J.). DSS admits that there is no reason to conclude at this time that plaintiff cannot prove that fact. Reply Memorandum at 7.

Accordingly, defendants' motion to dismiss is denied, but defendants are free to raise the issue in a motion for summary judgment after relevant discovery is complete.

### IV. *Conclusions.*

All of defendants' motions in *Thorn*, 81 Civ. 2543, are denied, with prejudice to their renewal, except for the claim of intentional infliction of emotional harm, which is hereby dismissed; further, summary judgment may be sought by the individual defendants after all relevant discovery is complete. All of defendants' motions in *Bethea*, 81 Civ. 2760, are denied; summary judgment may be sought by defendants with respect to the breach of contract claim after relevant discovery is complete. Discovery in both cases shall proceed forthwith.

SO ORDERED.