Dwight C. Martin, Respondent, v Julius Dierck Equipment Co. et al., Appellants.

Raymond Corporation, Third-Party Plaintiff-Appellant, and Western Electric Corp., Third-Party Defendant-Respondent.

Second Department, June 14, 1976

*Rivkin, Leff & Sherman* for Julius Dierck Equipment Co., appellant.

*Alexander, Ash, Schwartz & Cohen (Sidney A. Schwartz* and *Irwin H. Haut* of counsel), for Raymond Corporation, appellant.

*Lawrence M. Rosenberg (Seymour Armstrong* of counsel), for respondent.

TITONE, J. Plaintiff, a resident of the District of Columbia, was injured during the course of his employment at the premises of his employer, Western Electric Corporation, located in Arlington, Virginia. The accident occurred on June 7, 1968 while he was operating a forklift truck which was manufactured by defendant Raymond Corporation (Raymond), and which was sold to Western Electric, "f.o.b. Greene, New York", through Raymond's distributor, defendant Julius Dierck Equipment Co. (Dierck). Both the manufacturer and the distributor are New York State corporations. Plaintiff became 21 years of age on May 6, 1969.

The action was commenced against Dierck on May 21, 1971 and against Raymond on June 25, 1971. The complaint contains causes of action for negligence and breach of warranty against both New York firms. It alleges, *inter alia,* that plaintiff sustained injuries when the forklift truck which he was operating at the Western Electric warehouse in Arlington, Virginia malfunctioned and could not be stopped, causing him to be thrown therefrom.

At Special Term, both New York corporations moved for summary judgment, claiming that the matter is governed by the Virginia Statute of Limitations, which states that "every action for personal injuries shall be brought within two years next after the right to bring the same shall have accrued" (Virginia Code [1950], § 8-24). They argued that the nonresident plaintiff's causes of action, for breach of warranty and for negligence, accrued without the State on May 6, 1969, the date of plaintiff's 21st birthday, and pointed out that the within action was commenced more than two years after that date. Therefore, concluded defendants, under the New York "borrowing" statute (CPLR 202), as between the New York and Virginia Statutes of Limitations, they are entitled to the benefit of the one enacted in Virginia, which has the shorter period of time. CPLR 202 provides that, where a cause of action accrues outside of New York in favor of a nonresident, the action "cannot be commenced after the expiration of the time limited by the laws of either the state [New York] or the

place without the state where the cause of action accrued" (bracketed matter supplied). It should also be noted that, under Virginia decisionsal law, it has been held that an action to recover damages for personal injuries based upon a breach of warranty is essentially an action for personal injuries and, therefore, that the two-year limitation statute pertaining to personal injuries applies, rather than the statute pertaining to contracts *(Friedman v Peoples Serv. Drug Stores,* 208 Va 700).

Special Term rejected appellants' argument, citing *Myers v Dunlop Tire & Rubber Corp.* (69 Misc 2d 729, mod 40 AD2d 599). With respect to the breach of warranty claims, the Special Term held that they had accrued in New York, the place where the sale of the forklift truck took place, and, therefore, that the New York "borrowing" statute, pertaining to a nonresident's causes of action accruing outside the State, did not apply. Special Term further reasoned that since the warranty claims accrued in this State, New York's own four-year Statute of Limitations (Uniform Commercial Code, § 2-725) applied and, hence, the action as to said claims was timely brought in view of the fact that the Statute of Limitations was tolled until plaintiff reached his majority (see CPLR 208). As to the negligence cause of action, Special Term was of the opinion that, under our "borrowing" statute, the Virginia Statute of Limitations applied since the injury occurred in that State and, as a result, such cause accrued there. However, it also held that in borrowing the Virginia statute, New York must apply the tolling provisions contained in section 8-33 of the Virginia Code (1950), because factual questions were presented with respect to whether jurisdiction was obtainable in Virginia over the New York corporations (under that State's long-arm statute [Virginia Code (1950), § 8-81.2]).

In *Myers v Dunlop Tire & Rubber Corp. (supra),* upon which Special Term relied, a New York manufacturer shipped a tire f.o.b. to Kentucky. Some time later, the tire exploded in that State while plaintiff, a Kentucky resident, was mounting it in the course of his employment. Special Term in New York County held that plaintiff's causes of action for negligence and breach of warranty both accrued in this State because the tire was manufactured and sold here and, therefore, that the "borrowing" statute was inapplicable. The First Department, although affirming Special Term's determination that the warranty cause of action was governed by New York law, because it was manufactured here, modified the order with

respect to the negligence cause of action. It held that since the accident occurred in Kentucky, the negligence claim accrued there and, hence, it was barred by that State's one-year Statute of Limitations.

We are of the view that Special Term erred in fragmenting the complaint by holding that the warranty causes of action accrued in this State because the sale of the forklift truck was consummated here, while the negligence cause of action accrued in Virginia because the accident occurred there. In reaching this conclusion we are fully aware that we are not adhering to the rationale upon which the ultimate determination was reached by the First Department in *Myers v Dunlop Tire & Rubber Corp. (supra)*. However, we believe that under the modern conflict of laws doctrine, where a breach of warranty cause of action and one in negligence arise out of the same incident or transaction, instead of routinely looking to the place of performance with respect to a claim under the law of contracts, and to the place of occurrence with respect to a claim under the law of torts, a court should first ascertain the underlying nature of plaintiff's action and then decide which area or locality has the primary interest in the matters in dispute. To put it succinctly, the test requires us to determine what the essence of the action is and which jurisdiction has the most significant contacts with the issues before the court (cf. *Babcock v Jackson,* 12 NY2d 473; *Auten v Auten,* 308 NY 155).

With respect to the essence or underlying nature of this action, we believe it to be tortious in concept, notwithstanding that two of the three causes of action are for breach of warranty. In his complaint plaintiff alleges, under his negligence cause of action, that the appellant corporations assembled and distributed the vehicle in a dangerous and defective condition, that they failed to provide it with safety devices, that the vehicle's reverse gears were defective and hazardous to users of the vehicle and that there was a failure to give proper and adequate warning and instructions with respect to the vehicle's operation, management and care. Under the two warranty causes of action plaintiff contends that the appellant corporations manufactured, sold, distributed and supplied the vehicle and its appurtenant parts to Western Electric in a defective, dangerous and hazardous condition, and that they were unsafe and unfit for their intended use. Thus, reduced to its simplest terms, this case involves personal injuries sus-

tained in Virginia by a nonresident of this State, arising out of hazardous and dangerous defects in a forklift truck which the appellant corporations should have corrected before selling and distributing it for extensive use in Virginia by a person such as plaintiff. Without proof of negligence on the part of appellants, we question whether plaintiff could prevail under his independent claims for breach of warranty as herein pleaded (see *Alyssa Originals v Finkelstein,* 22 AD2d 701, affd 24 NY2d 976).

As to the jurisdiction having the greater interest in the within litigation, we conclude that all directional signals point to Virginia. The "life" of the forklift in this State was limited to a dormant and transitory interval between its manufacture and shipment to its ultimate destination in Arlington, Virginia. It was in the latter locality where it was consigned to be used and where, in fact, it was put to extensive use at the purchaser's place of business, the situs of plaintiff's employment (cf. *Nader v General Motors Corp.,* 25 NY2d 560). These facts are in sharp contrast to those set forth in *Babcock v Jackson* (12 NY2d 473, *supra)* and *Tooker v Lopez* (24 NY2d 569), both of which involved New York residents riding in automobiles owned by New York residents, which vehicles were registered and insured in this State, although temporarily located in a foreign State or country at the time of the accidents. In such situations, the Court of Appeals held that the New York statutes applied and not those of the foreign jurisdictions, since it was this State which had the dominant contacts and superior claim for the application of this law. In the matter at bar, the nonresident's "contact" with New York and its law, limited to the fact that the vehicle was manufactured in this State, is at best fortuitous and tangential (cf *Anderson v A/S Berge Sigval Bergesen,* 29 AD2d 756, affd 22 NY2d 944; 15A CJS, Conflict of Laws, §§ 8 [1], 8 [2], 8 [3]).

This court is also of the opinion that the framers of the Uniform Commercial Code were not of a mind to follow blindly the traditional conflict of laws theory with respect to contracts and the related laws of warranty, to wit, that the place of making or performing the contract is controlling as to the governing law. This is evidenced by the following language contained in section 1-105 of the Uniform Commercial Code, which provides, *inter alia:* "(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may

agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Act *applies to transactions bearing an appropriate relation to this state"* (emphasis supplied).

We believe it relevant that the official Uniform Commercial Code comment refers to a transaction's significant contacts as being factors in the choice of law. This, in and of itself, indicates legislative approval of the Restatement rule of "most significant relationship" (see *Wilcox v Wilcox,* 26 Wis 2d 617; see, also, *Griffith v United Air Lines,* 416 Pa 1; Restatement, Conflict of Laws 2d, §§ 6, 146, 188).

Accordingly, we hold that under the "grouping of contacts", or "center of gravity", conflict of laws doctrine, the causes of action in this matter accrued in Virginia; and, under New York's "borrowing" Statute of Limitations (CPLR 202), Virginia's two-year Statute of Limitations is applicable. In arriving at this conclusion, we also take cognizance of the fact that we are giving effect to the primary purposes of the "borrowing" statute, which are to prevent "forum shopping" by nonresident plaintiffs *(Daigle v Leavitt,* 54 Misc 2d 651; 1 Weinstein-Korn-Miller, NY Civ Prac, par 202.01), and also to give resident defendants the benefit of the shortest period of limitations *(Fullmer v Sloan's Sporting Goods Co.,* 277 F Supp 995).

We also disagree with Special Term's finding that factual questions are present as to whether the tolling provisions contained in section 8-33 of the Virginia Code (1950) became operative because jurisdiction allegedly could not have been obtained over the defendant New York corporations under Virginia's long-arm statute. Such statute (Virginia Code [1950], § 8-81.2), the language of which is similar to its counterpart in New York (CPLR 302), provides, *inter alia:* "When personal jurisdiction over person may be exercised.—(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

"(1) Transacting any business in this State;

"(2) *Contracting to supply services or things in this State;*

\*   \*   \*

"(4) Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct,

or derives substantial revenue from goods used or consumed or services rendered, in this State;

"(5) Causing injury in this State to any *person by breach of warranty expressly or impliedly made in the sale of goods outside this State when he might reasonably have expected such person to use,* consume, or be affected by the goods in this State, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;" (emphasis supplied).

In this case, the record reveals that in the past the distributor (Dierck) has shipped equipment such as forklift trucks to defendant Western Electric at its plant in Arlington, Virginia and that, for more than 15 years, the manufacturer (Raymond) used an independent franchise dealer in that State to maintain its equipment and parts and to take orders for shipment directly to customers in Virginia, Maryland and the District of Columbia. In 1973 such dealer handled approximately $2,350,000 of Raymond's total sales, which were approximately $47,055,000. In view of the above, it is clear that both New York corporations come within the ambit of the Virginia long-arm statute set forth above. The Virginia long-arm statute is a single-act statute requiring only one transaction in Virginia to confer jurisdiction and was intended to assert jurisdiction over nonresidents who engage in some purposeful activity in that State to the extent permissible under due process (see *John G. Kolbe, Inc. v Chromoderm Chair Co.,* 211 Va 736).

The determination of Special Term should be reversed, on the law, and the motions of the appellant corporations for summary judgment granted.

HOPKINS, Acting P. J., COHALAN and CHRIST, JJ., concur; DAMIANI, J., dissents and votes to affirm the order on the opinion of Mr. Justice WALLACH at Special Term.

Order of the Supreme Court, Queens County, dated January 27, 1975, reversed, on the law, with one bill of $50 costs and disbursements to appellant Raymond Corporations payable by plaintiff, and motions granted. No findings of fact were presented for review.