**BACHE HALSEY STUART INC., Plaintiff,**

v.

**Arthur B. NAMM and Judy A. Namm, Defendants.**

**No. 76 Civ. 152.**

United States District Court, S. D. New York.

March 13, 1978.

 

OPINION

GRIESA, District Judge.

This is an action by Bache Halsey Stuart Inc. ("Bache"), a brokerage firm, against two individuals, Mr. and Mrs. Arthur B. Namm, alleging violations of section 4b of the Commodity Exchange Act, 7 U.S.C. § 6b (1970), in connection with the opening and conduct of a commodities futures trading account in the name of Mrs. Namm's mother. Bache seeks to recover an account deficit of some $184,000. Bache also advances pendent state law claims, one in fraud and deceit and one in contract, and claims on these counts the right to recover costs, attorney's fees, and punitive damages of $500,000, as well as the account deficit. The Court denied motions to dismiss the plaintiff's claims on March 7, 1977.

In their Answer and Counterclaims, each of the defendants advances a counterclaim against Bache. These counterclaims, grounded in the Commodity Exchange Act and pendent jurisdiction, seek some $973,-000 for alleged overtrading by Bache of a commodities futures trading account of Mr. Namm's, and $42,000 for alleged overtrading of an account of Mrs. Namm's.

The plaintiff has moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss the counterclaims on two grounds: first, that they are barred by the statute of limitations, and second, that they are not supported by sufficient allegations of control over the accounts by Bache and of excessiveness of the trading of the accounts. In light of the Court's conclusion that the counterclaims are time barred, it is unnecessary to reach plaintiff's second ground for dismissal.

The Commodity Exchange Act does not provide a limitation period for civil actions brought under its provisions. Thus, the federal courts must look to the limitation periods of their forum states governing the most nearly analogous cause of action. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

Sullivan & Cromwell by James R. DeVita, New York City, for plaintiff.

Milton S. Zeiberg, New York City, for defendants.

In applying the New York law, the first step is to determine the effect of the "borrowing statute," N.Y.Civ.Prac.Law § 202 (McKinney 1972):

"An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

Plaintiff argues that defendants' counterclaims are time barred because (1) defendants are residents of Connecticut, (2) the cause of action accrued in Connecticut, and (3) the Connecticut limitation period, which is shorter than the New York period, had lapsed before the counterclaims were interposed. These points will be considered in order below.

Neither party to this action has requested a hearing on factual issues involved in the statute of limitations motion. Instead, the parties have elected to submit affidavits, and to have the Court treat the motion as one for summary judgment. See Defendants' Memorandum in Opposition, September 29, 1977, at 14. As set forth below, the Court finds that the affidavits are sufficient to resolve the necessary factual issues involved in the motion, and that on these issues "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Thus, the Court shall exercise its discretion to "hear the matter on affidavits." Fed.R. Civ.P. 43(e).

### (1)

As indicated in its last clause, New York's borrowing statute refers to a foreign state's limitation period only if the cause of action accrues in favor of a non-resident of New York. Defendants contend they are New York residents for purposes of section 202, and plaintiff contends they are not.

■ An individual can have only one state of residence for purposes of the borrowing statute, and that is *the state of his domicile.* *Banasik v. Reed Prentice Division,* 34 A.D.2d 746, 310 N.Y.S.2d 127 (1970), *aff'd mem.,* 28 N.Y.2d 770, 321 N.Y.S.2d 376, 269 N.E.2d 618 (1971); N.Y.Civ. Prac.Law § 202, Practice Commentary C202:2, at 81 (McKinney 1972) (J. McLaughlin). Thus, residence for purposes of the borrowing statute is a narrower term than residence for the many other purposes for which multiple residency is possible.

■ It is well established that domicile entails not only residence in fact, but also *intent to make that place of residence one's home.* It is often necessary to examine the entire course of a person's conduct in order to draw the necessary inferences as to the relevant intent. *See, e. g., Korn v. Korn,* 398 F.2d 689 (3d Cir. 1968).

■ The burden of proving residence within the meaning of the borrowing statute rests on defendants, who seek to benefit from New York's longer limitation period. *See, e. g., Public Administrator v. Curtiss-Wright Corp.,* 224 F.Supp. 236, 240 (S.D.N. Y.1963).

The facts in the instant case are contained in the pleadings and in affidavits. Each defendant has submitted an affidavit, and plaintiff has submitted the affidavit of its attorney.

Until defendants responded to the present motion, there was no suggestion in the pleadings that they were anything but Connecticut domiciliaries. Though the pleadings did not address domicile, the Complaint contained allegations that defendants were Connecticut residents (¶¶ 6 & 7), which allegations must be deemed admitted because the Answer and Counterclaims failed to address them. Fed.R.Civ.P. 8(d).[1]

---

1. Also, the Answer and Counterclaims (¶ 1) admitted diversity of citizenship between defendants and the plaintiff. Bache was alleged in the Complaint (¶ 5) to be incorporated in Delaware and to have a principal place of business in New York. Defendants' admission of jurisdiction under 28 U.S.C. § 1332 (1970) might thus appear to foreclose their claiming New

Defendants nowhere expressly aver that they are New York domiciliaries. They do, however, argue that "the focus of their principal residence and investment activities is, and has been, in New York City." Memorandum in Opposition at 14. The facts cited in support of this argument appear in Mr. Namm's affidavit, and are in essence adopted by Mrs. Namm in her affidavit. The principal assertions are that Mr. Namm spent his week days residing at his New York residence and maintained his Connecticut residence "as a week-end place" (¶ 2); that he conducted all his business and investment activities in New York, and there were no communications with Bache from or to his Connecticut residence; that Bache's confirmation slips were mailed to his New York business office; that he filed New York State and New York City income tax returns; that his automobile was registered and principally garaged in New York; and that the power of attorney executed by his wife's mother and filed with Bache listed as his address his New York residence.

What is vital is whether the Namms' Connecticut or New York residence is where they intended to maintain their home. Individuals can have a residence in one state, and conduct their business in that state, while maintaining another residence in a second state which they consider to be their home.

Accepting all the factual assertions of defendants as true, the Court concludes that defendants have not proven that their New York residence was regarded by them as their home, and indeed the Court finds that defendants' primary residence, and their home, was in Connecticut. First, there is the admission of Connecticut residence in defendants' answer. Also, the United States Marshal's return of service on file in this action, which is a report admissible under Fed.R.Evid. 803(8), indicates that five unsuccessful attempts were made to serve Mr. Namm in his New York apartment, and carries the notations "rarely *here*" and "spend most of time in Connecticut." Third, and crucially, in sworn depositions in a related state court action, Mr. Namm gave his Connecticut residence as his "home address," and Mrs. Namm also gave the Connecticut residence as her address. Finally, at the Court's request, Mr. Namm has filed an affidavit dated March 10, 1978 which indicates that he and his wife filed nonresident New York State and New York City income tax returns for 1973, the year the events to which the counterclaims are addressed occurred. The Namms' filing of such returns entailed their representation that each of them was a "nonresident individual" within the meaning of N.Y.Tax Law § 605(a) and (b) (McKinney 1975) and N.Y.C.Admin.Code § U46–1.0(h) and (i) (1971). *See also* N.Y.Tax Law § 651(b)(3) (1975) (filing of joint nonresident return signifies *both* husband and wife are "nonresident individuals"). With one exception which has no bearing in the present case,[2] the state and local statutory definitions of "nonresident individual" (which are identical except as

---

York residency. However, as their Answer and Counterclaims (¶ 13) disclaimed knowledge sufficient to form a belief as to the allegations in the paragraph of the Complaint concerning Bache's state of incorporation and principal place of business, their admission of diversity jurisdiction could conceivably be read as admitting diversity only between themselves and Bache's state of incorporation, Delaware.

2. The only circumstance in which a New York domiciliary was permitted to file a nonresident return under the law which governed 1973 returns was when, even though a New York domiciliary, the person "maintains no permanent place of abode in this state [city], maintains a permanent place of abode elsewhere, and spends in the aggregate not more than thirty days of the taxable year in this state [city]." N.Y.Tax Law § 605(a)(1) (McKinney 1975); N.Y.C.Admin.Code § U46–1.0(h)(1) (1971). This proviso was directed at the special situation in which a New York domiciliary had transferred his "permanent place of abode" elsewhere but still either retained the positive intent necessary to New York domicile or had not yet fixed such an intent on another place of domicile. *See, e. g., Lane v. Gallman*, 49 A.D.2d 963, 373 N.Y.S.2d 700 (3d Dep't 1975). Under the facts of the present case, the Namms clearly could not have filed their returns as nonresidents in reliance on this proviso.

they refer to tax residence in the state and the city respectively) require that the person not be a New York domiciliary. Thus, by filing nonresident tax returns for the year 1973, the Namms affirmed that they were nondomiciliaries of New York in that year.

In sum, the Court concludes that defendants have failed to sustain their burden, in seeking to benefit from New York's longer limitation period, of proving New York domicile.

## (2)

■ New York's borrowing statute applies only to an "action based on a cause of action accruing without the state." In *Sack v. Low*, 478 F.2d 360 (2d Cir. 1973), and *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977), the Second Circuit, in applying New York's borrowing statute, addressed the issue of where an action "accrues" under New York law. *Arneil*, decided on February 16, 1977, reaffirmed the holding in *Sack* that a cause of action which, like the present one, alleges fraud "arises where 'its economic impact is felt, normally the plaintiff's residence.'" *Id.* at 779 (quoting 478 F.2d at 366). The Court stated: "We find nothing to indicate that New York law has changed in this respect . . ., and we apply the *Sack* rule here." *Id.*

The rule applied in *Sack* and *Arneil*, the "place of injury" rule which derives from the older conflict of laws concept of *lex loci delictus*, is to be distinguished from the "grouping of contacts" rule which derives from newer conflicts concepts. The *Arneil* Court specifically refused to conclude that the "grouping of contacts" rule, which New York adopted as to conflict of laws generally in *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), is New York law for the purposes of determining where a cause of action accrues under the borrowing statute. In doing so, the Court adopted the analysis of then Chief Judge Friendly in *Sack, supra*, 478 F.2d at 365–67, who analyzed the policies underlying several decisions of the highest New York court, the Court of Appeals, and noted the holding

of one of New York's four appellate departments applying the "place of injury" rule to the borrowing statute, *Myers v. Dunlop Tire & Rubber Corp.*, 40 A.D.2d 599, 335 N.Y.S.2d 961 (1st Dep't 1972).

After *Sack* was decided, and before *Arneil* was decided, another of New York's four appellate departments, in *Martin v. Julius Dierck Equipment Co.*, 52 A.D.2d 463, 384 N.Y.S.2d 479 (2d Dep't 1976), instead applied the "grouping of contacts" rule to the problem of where an action accrues for purposes of section 202. The *Martin* decision has been characterized as a "major breakthrough," N.Y.Civ.Prac.Law § 202, Supplementary Practice Commentary 1976 C202:3, at 18 (McKinney Supp.1978) (J. McLaughlin), and in *Natural Resources Corp. v. Royal Resources Corp.*, 427 F.Supp. 880, 883–84 (S.D.N.Y.1977), a decision postdating and discussing *Arneil*, one district court in this circuit relied on *Martin* in applying the "grouping of contacts" rule to the New York borrowing statute. However, this Court concludes on balance that it is foreclosed from departing from the holding in *Arneil* that the "place of injury" rule is the law of New York. Although the *Arneil* decision did not refer to the *Martin* case, and indeed an examination of the briefs filed with the Court of Appeals shows none of the parties discussed the *Martin* case, *Martin* was handed down on June 14, 1976, over eight months before *Arneil*, and this Court should not lightly presume that the Court of Appeals failed to consider it in their deliberations. More significantly, however, the major reliance in both *Arneil* and *Sack* is not on any tabulation of decisions of lower state courts, but rather is on the policies of the borrowing statute and of state law generally, as interpreted by the New York Court of Appeals. Even if the decisions of intermediate state courts take a particular position without exception, which is not the case here, federal courts must follow "persuasive evidence that the highest state court would rule otherwise." *King v. Order of United Commercial Travelers*, 333 U.S. 153, 158, 68 S.Ct. 488, 491, 92 L.Ed. 608 (1948). As the Court explained in *Sack* :

"One of the policies behind *Babcock* and many of its harbingers . . . was to afford New York residents the protection of those rules of substantive law underlying which New York had significant policies or as to which New York had important interests. In sharp contrast, the policy behind the borrowing statute is to protect New York resident-defendants · from suits in New York that would be barred by shorter statutes of limitations in other states where non-resident-plaintiffs could have brought suit."

478 F.2d at 367. This passage was followed in *Arneil, supra,* 550 F.2d at 779–80.

The Court thus concludes that in determining where the present cause of action accrued within the meaning of New York's borrowing statute, it should apply the "place of injury" rule of the Restatement (First) of Conflict of Laws § 377, Note 4 (1934). As noted in *Sack, supra,* 478 F.2d at 366, and *Arneil, supra,* 550 F.2d at 779, courts have generally interpreted the place of injury in fraud actions as the residence of the injured party. Though both *Sack, supra,* 478 F.2d at 367–68, and *Arneil, supra,* 550 F.2d at 780, note that there might be circumstances under which the place of injury under the traditional rule would not be the place of principal residence of the injured party, defendants fail to point to any circumstances which would shift the place of the "economic impact" of the present fraud away from their Connecticut domicile. Defendants do not explain how their New York residence or business activities would do so. This is an aspect of *their* burden of proof, not, as asserted in their Memorandum in Opposition at 19, the burden of plaintiff. Just as the plaintiffs in *Arneil* "became poorer Washingtonians," *id.,* the Court must conclude that the defendants became poorer domiciliaries of Connecticut.

### (3)

As the cause of action alleged in defendants' counterclaims accrued in Connecticut, the Connecticut limitation period must be applied if it is shorter than the New York period. The governing New York limitation period for federal securities frauds is six years. N.Y.Civ.Prac.Law § 213(8) (McKinney Supp.1977); *Klein v. Shields & Co.,* 470 F.2d 1344, 1346 (2d Cir. 1972). The Connecticut period is either two or three years. It is two years if the Court follows the analysis in *Hitchcock v. deBruyne,* 377 F.Supp. 1403 (D.Conn.1974), which held that the Connecticut limitation period applicable to federal securities frauds is that of the blue sky law, Conn.Gen.Stat. § 36–346(e) (1975), now succeeded to by section 30(e) of the Connecticut Uniform Securities Act, Pub.Act No. 77–482, 1977 Conn.Legis.Serv. 852. It is three years if the Court, based on *Stull v. Bayard,* 561 F.2d 429, 431 (2d Cir. 1977) ("In actions alleging fraudulent violations of the federal securities law, this court has consistently adopted state statutes of limitations for actions based upon common law fraud."), concludes that Conn.Gen.Stat. § 52–577 (1975) applies. Thus, defendants' counterclaims must at least meet a three-year limitation period.

■ Although this action was filed in January 1976, the counterclaims were not interposed until April 1977. It is therefore important to determine whether the counterclaims can relate back to the date of the filing of the complaint for limitations purposes. This is a question of state law. 3 J. Moore, Federal Practice ¶ 13.11, at 13–246 and –247 (1974). The appropriate state law to look to concerning relation back is the law of Connecticut, because the New York borrowing statute calls for considering the entire body of limitations law of the foreign jurisdiction where a cause of action in favor of a New York non-resident accrues. 1 J. Weinstein, H. Korn & A. Miller, New York Civil Practice ¶ 202.02 (1977). The law of Connecticut is that a counterclaim does not relate back to the date of the complaint. *See Consolidated Motor Lines v. M & M Transportation Co.,* 128 Conn. 107, 20 A.2d 621 (1941); *Seletsky v. Roy,* 23 Conn.Supp. 139, 177 A.2d 805 (C.P. Hartford County 1961); *see also Brown v. Hipshire,* Tenn., 553 S.W.2d 570 (1977) (interpreting Connecticut law). Thus, if the limitation period

began running more than three years before the counterclaims were actually interposed, they are barred.

■ Federal law governs when the limitation period commences running. *Arneil, supra*, 550 F.2d at 780. This point "is not the time at which a plaintiff becomes aware of all of the various aspects of the alleged fraud, but rather . . . the time at which plaintiff should have discovered the general fraudulent scheme." *Id.* (quoting *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir. 1975)). All of the transactions of which defendants complain had been completed before July 1973, and the Court is offered no reason to doubt that July 1973 is the latest possible date defendants "should have discovered the general fraudulent scheme" they allege took place. The Namms' affidavits make plain that they received confirmation tickets and monthly statements reflecting the subject transactions. They were thus clearly on notice of the volume of trading in their accounts. *See, e. g., Daniels v. Ernst & Ernst*, [1976–1977 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 95,871 (S.D.N.Y.1977). It would appear that the present counterclaims were only pursued when Bache decided to file suit for the account deficits.

As the limitation period expired, at the latest, in July 1976, and the counterclaims were interposed in April 1977, they are time barred. Accordingly, the counterclaims are dismissed.

So ordered.