OPINION
 

 GAGLIARDI, District Judge.
 

 Plaintiff Landmark Land Company, Inc. (“Landmark”) commenced this action for a writ of mandamus and monetary and injunctive relief against the Federal Deposit Insurance Corporation (the “FDIC”), the United States of America, and several government employees affiliated with the FDIC (the “FDIC officials”).
 
 [1]
 
 The action was initially based upon the allegedly wrongful refusal of defendants to deliver to plaintiff a certain promissory note (the “Cove note”) and deed of trust (the “Cove deed of trust”) executed by a joint venture known as La Quinta Cove. The FDIC and FDIC officials filed a counterclaim for interpleader pursuant to 28 U.S.C. § 1335 to permit this court to adjudicate conflicting claims to the Cove note and deed of trust (collectively referred to hereinafter as the “Cove collateral”). Pursuant to an order of this court, the Cove collateral had previously been delivered to the Clerk of the court.
 
 [2]
 
 The counterclaim defendants that claim an interest in the Cove collateral in these proceedings are Landmark and Mercantile Holdings, Inc. (“Mercantile Holdings”), the successor in interest with respect to the Cove collateral to counterclaim defendant the Mercantile National Bank of Chicago (the “Mercantile Bank”) (Mercantile Bank and Mercantile Holdings are collectively referred to hereinafter as “Mercantile”). The FDIC, which along with the FDIC officials and the United States has settled its dispute with Landmark, now maintains that Landmark is entitled to possession of the Cove collateral as its sole owner. Presently before the court is a motion for partial summary judgment by Landmark seeking; (1) an order compelling the Clerk of this court to deliver the Cove collateral to Landmark; (2) a declaration that Landmark’s rights in the Cove collateral have priority over Mercantile’s claimed interests; and (3) a declaration that all security interests other than Landmark’s in the Cove collateral have been extinguished. For the reasons set forth below, Landmark’s motion is granted.
 
 [3]
 

 Statement of Facts
 

 For the purpose of deciding the instant motion, the court has relied exclusively upon the following materials: numerous documents submitted by Landmark and Mercantile, the authenticity of which has
 
 *968
 
 not been challenged; facts set forth in affidavits submitted by Mercantile; and undisputed facts set forth in affidavits submitted by Landmark. In accordance with the requirements of Rule 56(c), the court has resolved all ambiguities and drawn all reasonable inferences against Landmark.
 
 See United States v. Diebold, Inc.,
 
 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam);
 
 American International Group, Inc. v. London American International Corp. Ltd.,
 
 664 F.2d 348 (2d Cir. 1981). The facts so determined are as follows.
 
 [4]
 

 In 1972, the First State Bank of Northern California (“First State”) made a loan of $300,000 to Elkee Corporation (“Elkee”) and loans of $170,000 each to Richard Curtis, Michael Whelan and James Frankel. These loans were secured by a deed of trust (the “1972 deed of trust”) on certain California property owned by Elkee. In 1974, Elkee along with Unique Golf Concepts, Inc. and Landmark formed a joint venture known as La Quinta Cove for the purpose of developing certain California real estate (the “La Quinta property”) then owned by Elkee which included the property subject to the 1972 deed of trust. Pursuant to the joint venture agreement, Elkee sold the La Quin-ta property to the joint venture in exchange for, in part, the Cove collateral,
 
 i.e.,
 
 a nonnegotiable promissory note in the amount of $1,080,000 payable to Elkee (the Cove note) secured by a deed of trust on the La Quinta property (the Cove deed of trust). The transfer, of clear title to the La Quinta property from Elkee to La Quinta Cove was made possible by a deed of reconveyance executed by First State on May 10, 1974 which released and reconveyed First State’s interest in the property under the 1972 deed of trust.
 

 During the next three years, Elkee assigned the Cove collateral at least three times to secure its own numerous obligations. The first collateral assignment, which was made in May 1974, was to First State to secure “the obligations of Elkee Corporation in the principal amount of $240,000.” First State took possession of the Cove collateral pursuant to this initial assignment and remained in possession during the subsequent assignments. The second assignment, which incorporated the first assignment, was made in January 1975. At that time, Elkee executed an instrument assigning the Cove collateral first to First State to secure Elkee’s obligations which then amounted to $280,000, and then to the Drovers National Bank of Chicago (“Drovers”) tó secure Elkee’s indebtedness of approximately $1,161,000. Elkee subsequently repaid the $280,000 debt to First State using funds that Elkee obtained through a $275,000 loan from Mercantile Bank. Elkee did not, however, repay its obligation to Drovers. Finally, in March 1976 Elkee assigned the same collateral to First State and to Mercantile Bank, this time to secure the loans made by First State to Curtis, Whelan and Frankel. Mercantile Bank had previously purchased from First State 100 percent participations in the loans to Curtis and Whelan.
 
 [5]
 

 
 *969
 
 The FDIC’s interest in the Cove collateral commenced in 1976 after First State was declared insolvent. In May 1976, the FDIC in its corporate capacity as liquidator of First State (“FDIC-First State”) obtained First State’s rights to the Cove collateral, and took physical possession of the Cove collateral as well. In 1978, Drovers was also declared insolvent and the FDIC in its corporate capacity as liquidator of Drovers (“FDIC-Drovers”) obtained Drovers’ rights to the Cove collateral. FDIC-Drovers, in turn, sold all of its right, title and interest in the Cove collateral to Landmark after Elkee defaulted on the underlying debt owed by Elkee to Drovers.
 

 The instant action was commenced by Landmark after FDIC-First State refused to relinquish possession of the Cove collateral. Landmark’s asserted priority to this collateral is premised upon the rights Landmark acquired through the purchase of the collateral from FDIC-Drovers, which in turn claimed priority to the collateral under the January 1975 assignment from Elkee to First State and then to Drovers. Mercantile’s asserted priority to the Cove collateral is premised upon its status as successor in interest to First State’s rights with respect to loans, made by First State which were allegedly secured by the Cove collateral.
 

 Discussion
 

 I.
 
 The Applicable Law
 

 The resolution of the conflicting claims at issue in this case turns on the legal effect of the successive collateral assignments of the Cove note and deed of trust, and on the legal effect of the sale of the Cove collateral from FDIC-Drovers to Landmark following the default by Elkee on its obligations to Drovers. To the extent that the claimed interests in the Cove collateral involve the rights and obligations of the FDIC, the relevant issues are governed by federal law.
 
 D’Oench, Duhme & Co. v. Federal Deposit Insurance Corp.,
 
 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942);
 
 Federal Deposit Insurance Corp. v. Meo,
 
 505 F.2d 790, 793 n.4 (9th Cir. 1974);
 
 Riverside Park Realty Company v. Federal Deposit Insurance Corp.,
 
 465 F.Supp. 305, 308 (M.D.Tenn.1978);
 
 In re Anjopa Paper & Board Manufacturing Co., Inc.,
 
 269 F.Supp. 241, 252 (S.D.N.Y.1967). However, where, as in the instant case, “the state commercial codes ‘furnish convenient solutions in no way inconsistent with adequate protection of the federal interests],’ ” the court should “decline-to override intricate state laws of general applicability on which private creditors base their daily commercial transactions.”
 
 United States v. Kimbell Foods, Inc.,
 
 440 U.S. 715, 729, 99 S.Ct. 1448, 1459, 59 L.Ed.2d 711 (1979) (quoting
 
 United States v. Standard Oil Co.,
 
 332 U.S. 301, 309, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947)). Accordingly, to the extent that federal law is applicable to the instant case, the federal rule of decision is given by the applicable state law.
 
 Id.
 

 In order to determine the applicable state law the court turns to the relevant New York conflict of laws doctrine. As the analysis below indicates,
 
 see
 
 pp. 976-977
 
 infra,
 
 the interests purportedly created by the successive collateral assignments fall within the ambit of article 9 of the Uniform Commercial Code (“U.C.C.”).
 
 [6]
 
 Therefore, the court must apply the relevant U.C.C. conflicts rules set forth at N.Y.U.Q.C. §§ 9-103(l)(b) & 1-105(1).
 

 N.Y.U.C.C. § 9-103(l)(b) provides that the governing law with respect to the perfection of security interests and the effect
 
 *970
 
 of perfection or non-perfection of security interests is determined as follows:
 
 [7]
 

 Except as otherwise provided in this subsection, perfection and the effect of perfection or non-perfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected.
 

 The Cove collateral was in California in the possession of First State at all times during which the parties to this action could claim that their purported security interests became perfected. Accordingly, all perfection issues herein are governed by California law.
 

 The choice of law with respect to all other issues is governed by N.Y.U.C.C. § 1-105(1). Under this provision, the court should apply the law of the jurisdiction having the most significant contacts with the given transactions.
 
 See Martin v. Julius Dierck Equipment Co., 52
 
 A.D.2d 463, '468, 384 N.Y.S.2d 479, 483 (2d Dep’t 1976),
 
 aff’d on other grounds,
 
 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978); U.C.C. § 1-105, Official Comment 3;
 
 [8]
 
 N.Y.U.C.C. § 1-105, New York Annotation (1) (McKinney 1964).
 

 The most significant contacts in the instant case with respect to each of the relevant transactions involving the Cove collateral are plainly with the State of California: the Cove note and deed of trust were executed in California by La Quinta Cove, a joint venture formed to develop California property; the Cove deed of trust covered that California property; the Cove collateral was first pledged to First State, a California bank, by Elkee (an Illinois corporation), and the Cove collateral remained in California in the possession of either First State or FDIC-First State until it was transferred to thé Clerk of this court pursuant to court order. Therefore, California law governs all of the substantive issues that are determinative of the rights of the claimants to the Cove collateral.
 

 The next relevant inquiry is whether the transactions involving the collateral assignments of the Cove note and deed of trust fall within the ambit of article 9 of the U.C.C. as enacted in California, Cal.Com.Code § 9101
 
 et seq.
 
 Although it is clear that the collateral assignment of a secured note is governed by article 9,
 
 see
 
 U.C.C. § 9-102(3), Official Comment 4, the authority from various jurisdictions is divided over whether article 9 or real property law governs the collateral assignment of an accompanying real property interest that secures the note, such as a deed of trust, mortgage or lease. The confusion is created by the apparent conflict between U.C.C. § 9-104(j) (Cal.Com.Code § 9104(j)), which excludes from article 9 the “transfer of an interest in or lien on real estate,” and U.C.C. § 9-102(3) (Cal.Com.Code § 9102(3)), which provides that “application of this article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Article does not apply.” Some courts have read § 9— 104(j) broadly to exclude from article 9 all transfers of real property interests notwithstanding § 9-102(3).
 
 See In re Bristol As
 
 
 *971
 

 sociates, Inc.,
 
 505 F.2d 1056 (3d Cir. 1974);
 
 Rucker v. State Exchange Bank,
 
 355 So.2d 171 (Fla.App.1978). This view not only squarely conflicts with the plain meaning of § 9 — 102(3), but also may give rise to the anomalous situation in which one secured creditor has priority to the note under article 9 principles and another has priority to the property interest that secures the note under local property law. This leaves one creditor with an unsecured note and the other with a mortgage or deed of trust that is worthless without the note that it secures — a result clearly not intended by any of the parties to the relevant transactions.
 
 See
 
 Comment,
 
 Security Interests in Notes and Mortgages: Determining the Applicable Law,
 
 79 Colum.L.Rev. 1414, 1422-23 (1979). The more compelling view is set forth in several cases, including cases which interpret California law, that read § 9— 104(j) in light of the plain meaning of § 9-102(3), and hold that article 9 governs the collateral assignment of a real property interest securing a note as well as the collateral assignment of the note itself.
 
 Starr v. Bruce Farley Corp. (In re Bruce Farley Corp.),
 
 612 F.2d 1197 (9th Cir. 1980) (applying California law);
 
 Huffman v. Wikle (In re Staff Mortgage and Investment Corporation),
 
 550 F.2d 1228 (9th Cir. 1977) (applying California law);
 
 Groves v. United States,
 
 202 Ct.Cl. 660 (1973);
 
 Black v. Sullivan,
 
 48 Cal.App.3d 557, 122 Cal.Rptr. 119 (1975);
 
 E. Landau Industries,. Inc. v. 385 McClean Corp.,
 
 5 U.C.C.Rep.Serv. 1279 (N.Y.Sup.Ct., Westchester Co. 1969);
 
 accord,
 
 1 Gilmore,
 
 Security Interests in Personal Property,
 
 § 10.6 (1965); White & Summers,
 
 Uniform Commercial Code
 
 890-91 (2d ed.1980). Accordingly, the court concludes that the successive assignments of both the Cove note and the Cove deed of trust are governed by article 9 of the California Commercial Code.
 

 II.
 
 The May 15, 1974 Assignment
 

 On May 15, 1974 Elkee sent First State two letters signed by William Bright, President of Elkee. One of the letters provided:
 

 Elkee Corporation hereby assigns for collateral purposes all of the right, title and interest in and to that certain note dated May 8, 1974 made by La Quinta Cove (a joint venture) in the principal amount of $1,080,000, made payable to Elkee Corporation.
 

 The second letter, which enclosed the Cove note, stated the following:
 

 Enclosed is a note signed by Landmark Land Company, Inc.; Unique Golf Concepts Incorporated and Elkee Corporation as joint venturers d/b/a La Quinta Cove in the principal amount of $1,080,000 which you are to hold as collateral for the obligations of Elkee Corporation in the principal amount of $240,000. You are to return the enclosed collateral to Elkee Corporation upon retirement of the existing debt to you.
 

 The letter also indicated that the note was secured by the Cove deed of trust and stated that “an assignment” was being sent under separate cover. These two letters, signed by Elkee and accepted along with the Cove collateral without protest by First State, together constitute a written agreement between Elkee and First State providing for a security interest in the Cove collateral.
 

 Under Cal.Com.Code § 9203(2) a security interest attaches when the following events set forth in § 9302(1) have taken place: “(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral.. . [;] (b) Value has been given; and (c) The debtor has rights in the collateral.” There is no question under the instant facts that as of May 14, 1974 First State’s security interest in the Cove collateral attached pursuant to § 9203. The dispute here is over which obligations the pledge of the Cove collateral secured. Mercantile contends that the parties intended this collateral assignment to secure the loans made by First State in 1972 to Curtis, Whelan and Frankel. Landmark contends that the assignment only secured Elkee’s own indebtedness to First State.
 

 The relevant language of the assignment documents is unambiguous on its
 
 *972
 
 face — it provides that the Cove collateral was to be held by First State “as collateral for the obligations of Elkee Corporation in the principal amount of $240,000,” a clear reference to Elkee’s indebtedness to First State. Under California law, however, extrinsic evidence is admissible to explain the meaning of a facially unambiguous written instrument if the written instrument is “reasonably susceptible” of the proffered interpretation.
 
 Pacific Gas & Electric Co. v. G. W. Thomas Drayage & Rigging Co.,
 
 69 Cal.2d 33, 37, 69 Cal.Rptr. 561, 564, 442 P.2d 641, 645 (1968);
 
 see Commercial Paper Holders v. R. W. Hine (In re Beverly Hills Bancorp),
 
 649 F.2d 1329, 1335 (9th Cir. 1981). This rule is applicable to the interpretation of pledge agreements falling within the ambit of article 9.
 
 See Neumeyer v. Union Bank,
 
 43 Cal.App.3d 873, 118 Cal.Rptr. 116 (2d District 1974). The determination of whether the instrument is reasonably susceptible of the proffered interpretation is a question of law for the court.
 
 Brobeck, Phleger & Harrison v. Telex Corp.,
 
 602 F.2d 866, 871 (9th Cir.),
 
 cert. denied,
 
 444 U.S. 981, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).
 

 The court concludes that the 1974 assignment is not reasonably susceptible of the interpretation urged upon the court by Mercantile. The record is devoid of any evidence suggesting that Elkee intended to assign the Cove collateral to secure the debts of Curtis, Whelan and Frankel to First State prior to the final assignment of the collateral in 1976. On the other hand, there is highly probative evidence indicating that in 1974 Elkee intended to assign the Cove collateral only to secure its own indebtedness to First State. In particular, the second assignment of the Cove collateral, which was effected through a formal assignment instrument executed by Elkee on January 17, 1975 and accepted by First State without protest, recites that Elkee, as the lawful holder of the Cove note, assigns it first to First State to secure a $280,000 indebtedness from Elkee to First State, and then to Drovers to secure Elkee’s indebtedness to Drovers.
 
 [9]
 
 The fact that this document makes no mention of any loans to Curtis, Whelan, and Frankel cannot be reconciled with Mercantile’s proffered interpretation of the 1974 assignment.
 

 Mercantile’s assertion that the 1974 assignment gives rise to a material issue of fact is principally based upon letters from First State to Frankel and Mercantile Bank, upon the certificates of participation given to Mercantile Bank by First State, and upon a First State loan approval form, all of which indicate that the loans to Curtis, Whelan or Frankel were secured by the Cove collateral.
 
 [10]
 
 These documents were each dated after the January 17, 1975 assignment,
 
 i.e.,
 
 after Elkee had again expressed in an unambiguous writing that the Cove collateral was pledged to First State only to secure Elkee’s direct indebtedness to First State. In light of the repeated clear expressions of Elkee’s intentions, and the acceptance without protest by First State of the instruments setting forth these in
 
 *973
 
 tentions, the court holds that the documents subsequently prepared by First State do not make the 1974 assignment reasonably susceptible of the very strained interpretation that Mercantile urges upon the court. Accordingly, there are no issues of fact relevant to the interpretation of the 1974 assignment.
 

 III.
 
 The January 17, 1975 Assignment
 

 As stated above, on January 17, 1975, Elkee executed an instrument which assigned the Cove collateral first to First State to secure Elkee’s indebtedness to First State in the principal amount of $280,-000 and then to Drovers to secure Elkee’s indebtedness to Drovers in the principal amount of $1,161,000.
 
 See
 
 note 9,
 
 supra.
 
 Following the execution of this instrument it is clear that the security interests in the Cove collateral purportedly created thereby attached in favor of both First State and Drovers under Cal.Com.Code § 9203.
 
 See
 
 p. 977 supra.
 
 [11]
 
 Mercantile argues that Mercantile Bank “in effect purchased” the secured loan of First State to Elkee by loaning Elkee funds which were used to repay Elkee’s obligation to First State. Landmark argues that since Elkee’s debt to First State was admittedly repaid by Elkee, Drovers thereupon acquired the senior security interest in the Cove collateral. Landmark further argues that Drovers’ security interest in the Cove collateral was perfected, giving Drovers priority over all subsequent assignees of the Cove collateral. These contentions are analyzed below.
 

 A.
 
 Mercantile Bank’s Purported Interest
 

 It is undisputed that on December 1, 1975, Mercantile Bank loaned Elkee $275,-000 so that Elkee could repay its loan from First State, and that Elkee used these funds to repay the loan from First State. Mercantile asserts that First State agreed to assign its interest in the Cove collateral to Mercantile Bank to secure Mercantile Bank’s loan to Elkee. Mercantile argues that through this transaction, Mercantile Bank in effect purchased Elkee’s secured obligation to First State. Mercantile further argues that since Elkee never repaid its loan to Mercantile Bank, Mercantile has the senior claim to the Cove collateral.
 

 This argument is without merit. Under the U.C.C., a security interest is extinguished once the underlying secured obligation is paid in full.
 
 Bank of Lexington v. Jack Adams Aircraft Sales, Inc.,
 
 570 F.2d 1220, 1225 (5th Cir. 1978);
 
 Rozen v. North Carolina National Bank,
 
 588 F.2d 83, 86 (4th Cir. 1978). Therefore, First State’s security interest in the Cove collateral was extinguished, and. Drovers obtained the senior security interest in the Cove collateral, once Elkee repaid its obligation to First State.
 

 B.
 
 Perfection of Drovers’ Security Interest
 

 The Cove note and deed of trust constitute non-negotiable “instruments” within the meaning of Cal.Com.Code § 9105(l)(i).
 
 See
 
 note 7,
 
 supra
 
 (construing the identical provision set forth at N.Y.U.C.C. § 9-105(l)(i)). Under Cal.Com.Code § 9304(1), a security interest in such instruments can be perfected only by the secured party taking possession.
 
 Starr v. Bruce Farley Corp. (In re Bruce Farley Corp.),
 
 612 F.2d 1197, 1199 (9th Cir. 1980);
 
 Huffman v. Wikle (In re Staff Mortgage and Investment Corp.),
 
 550 F.2d 1228, 1230 (9th Cir. 1977). However, the secured party is considered to be in possession of the collateral if the collateral is actually possessed by a third person who is the secured party’s agent or bailee. Cal.Com.Code § 9305; U.C.C. § 9-305, Official Comment 2. Where possession is effected through such a third person, the security interest becomes perfected when the third person receives notification of the secured party’s interest.
 
 Id.
 

 [12]
 

 
 *974
 
 The application of these principles to the facts of the instant case indicates that whether Drovers had a perfected security interest in the Cove collateral turns on whether First State, as the party with the senior security interest in the Cove collateral, possessed the Cove collateral as the agent or bailee of Drovers within the meaning of § 9305. Where, as in the instant case, the senior secured party in possession of the collateral acknowledges and accepts the instructions of the pledgor to deliver the collateral to the junior secured party after the debt to the senior secured party is satisfied,
 
 [13]
 
 then the senior secured party is considered to possess the collateral as the agent or bailee of the junior secured party.
 
 See Gins v. Mauser Plumbing Supply Co.,
 
 148 F.2d 974, 977 (2d Cir. 1945);
 
 [14]
 

 of. Winnett v. Inverness Counsel, Inc.,
 
 No. 76 Civ. 3810 (S.D.N.Y. August 14, 1979),
 
 aff’d mem.,
 
 No. 79-7577 (2d Cir. December 17, 1979) (junior security interest was not perfected where senior secured party in possession stated that it would not turn the collateral over to the junior pledgee absent instructions from the pledgor);
 
 Hale v. Kontaratos (In re Kontaratos),
 
 10 B.R. 956 (Bkrtcy., D.Me.1981) (notification from the pledgor to the senior pledgee in possession of the collateral of the junior pledgee’s interest is essential to the creation of a bailment sufficient to perfect the secondary pledge). Accordingly, Drovers had a perfected security interest in the Cove collateral following the execution of the January 17, 1975 assignment instrument by Elkee. As of that time, Drovers’ security interest had attached and First State possessed the collateral as the agent or bailee of Drovers.
 

 IV.
 
 The March 1976 Assignment
 

 In March 1976, Elkee executed “special pledge agreements” purporting to assign the Cove collateral to First State and Mercantile Bank as security for the loans from First State to Messrs. Curtis, Whelan and Frankel. As the discussion above indicates, prior to that time Elkee’s obligation to First State secured by the 1975 assignment had been repaid, extinguishing First State’s security interest and leaving Drovers with a senior perfected security interest in the Cove collateral.
 

 The rights to the Cove collateral acquired by Mercantile and First State under the 1976 assignment as against Drovers are governed by the applicable rule determining priority among conflicting security interests. This rule is given by Cal.Com.Code § 9312(5)(a) which provides in pertinent part: “Conflicting security interests rank according to priority in time of filing or perfection.” Therefore, even if the court assumes that Mercantile and First State acquired perfected security interests in the Cove collateral as a result of the 1976 assignment, this interest would be junior to the interest possessed by Drovers.
 

 V.
 
 Subsequent Transfers of the Cove Collateral
 

 FDIC-Drovers, the successor in interest to Drovers’ perfected security interest in the Cove collateral, sold the Cove collateral to Landmark in June 1979, after Elkee defaulted on the underlying obligation of Elkee to Drovers. Landmark argues that any subordinate security interests in the Cove collateral held by Mercantile were discharged as a result of this sale. The applicable rule of law is given by Cal.Com.Code § 9504(4) which provides:
 

 When collateral is disposed of by a secured party after default, the disposition
 
 *975
 
 transfers to a purchaser for value all of the debtor’s rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interest even though the secured party fails to comply with the requirements of this chapter or of any judicial proceedings.
 

 (a) In the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or
 

 (b) In any other case, if the purchaser acts in good faith.
 

 The collateral was disposed of through a non-public sale.
 
 [15]
 
 Therefore, all subordinate security interests in the Cove collateral were discharged as a result of the sale, and Landmark is the sole owner of all right, title and interest in the Cove collateral irrespective of whether FDIC-Drovers complied with the relevant article 9 requirements, provided that Landmark acted in good faith in connection with the purchase.
 

 The record establishes that there is no genuine issue of fact with respect to Landmark’s good faith in connection with the purchase of the Cove collateral from FDIC-Drovers. The record reflects that the terms of sale were arrived at pursuant to negotiations between FDIC-Drovers and Landmark, and the sale was authorized by a resolution of the Board of Directors of the FDIC. Mercantile’s only contention that bears upon Landmark’s conduct in connection with the sale from FDIC-Drovers is that at the time of the sale, Landmark had knowledge of the claims of Mercantile against the Cove collateral. However, the good faith requirement of § 9504(4)(b) does not require that the purchaser of the collateral lack knowledge of any pre-existing subordinate claims against the collateral.
 
 Northwest Equipment Sales Co. v. Western Packers, Inc.,
 
 623 F.2d 92, 95 (9th Cir. 1980) (construing Idaho’s identical statutory provision set forth at Idaho Code § 28-9-504(4)). Mercantile’s contentions are not relevant to the good faith of Landmark in connection with the sale, and therefore do not give rise to any genuine issues of material fact.
 

 Accordingly, the record establishes that as a matter of law, Landmark was the sole owner of the Cove collateral following Landmark’s purchase of the collateral in June 1979 from FDIC-Drovers.
 

 Conclusion
 

 For the reasons set forth above, Landmark’s motion for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P. is granted. The court hereby declares that Landmark is the sole owner of the Cove collateral, and that all other interests in the Cove collateral have been extinguished. Submit order on 5 days’ notice.
 

 So Ordered.
 

 [1]
 

 . The defendant FDIC officials are: Irvine H. Sprague, Chairman and member of the Board of Directors of the FDIC; William M. Isaac, Director and member of the Board of Directors of the FDIC; John G. Heimann, Comptroller of the Currency of the United States and member of the Board of Directors of the FDIC; and James E. Burns, an FDIC employee.
 

 [2]
 

 . The original Cove deed of trust could not be located by the FDIC. Therefore, the FDIC deposited a copy of the deed of trust with the Clerk along with an affidavit indicating that after due diligence the original deed of trust could not be found.
 

 [3]
 

 . Landmark asserted its claims against the Cove collateral in its reply to the FDIC’s counterclaim for interpleader. Mercantile Holdings set forth its claims in a cross-claim filed against all other counterclaim defendants. Landmark, in turn, filed counterclaims against Mercantile Holdings and the Mercantile Bank alleging abuse of process, slander, prima facie tort and conspiracy. In addition to these various claims before the court, there are also pending at least five other related actions in other jurisdictions. A temporary restraining order was entered by the court on November 21, 1980 staying all actions affecting the Cove collateral. By stipulation of the parties and order of the court dated December 1, 1980 the temporary restraining order was extended pending determination of a motion by Landmark, which is still pending, for an injunction
 
 pendente lite.
 
 The order also stayed all further proceedings in the instant case other than those proceedings pertaining to Landmark’s motions for partial summary judgment and for an injunction
 
 pendente lite.
 
 The need for continued injunctive relief will be considered subsequently in light of the instant decision.
 

 [4]
 

 . As required by General Rule 9(g) (now Civil Rule 3(g)) of the local rules of this court, Landmark submitted a statement of material facts as to which it contends that there is no genuine issue to be tried. Mercantile failed to submit a Rule 9(g) statement in opposition. Therefore, all material facts set forth in Landmark’s statement are deemed to be admitted under Rule 9(g).
 
 See Marbury Management, Inc. v. Alfred Kohn, Wood, Walker & Co.,
 
 373 F.Supp. 140, 144 (S.D.N.Y.1974) (Gagliardi, J.). Mercantile’s contention that a party who files an affidavit pursuant to Rule 56(f), Fed.R.Civ.P., is not obligated to file a Rule 9(g) statement contradicts the plain language of the Rule and is without merit. The court has not, however, relied upon Rule 9(g) in the disposition of this motion, since the record as a whole viewed in the light most favorable to Mercantile establishes that there are no material factual issues genuinely in dispute with respect to the relief requested in Landmark’s motion.
 

 [5]
 

 . The initial participation certificates issued by First State indicated that the loans were secured by the 1972 deed of trust which in fact had been released and reconveyed five months earlier. At the time of the reconveyance, First State was both the sole beneficiary and the trustee under the 1972 deed of trust. The re-conveyance was authorized by First State as beneficiary, duly executed by First State as trustee, and properly acknowledged and recorded. Furthermore, the record clearly indi
 
 *969
 
 cates that the intention of the parties was to extinguish the lien imposed by the 1972 deed of trust so that Elkee could convey clear title in the La Quinta property to La Quinta Cove. Accordingly, Mercantile acquired no rights in the La Quinta property under the 1972 deed of trust.
 

 [6]
 

 . The discussion
 
 infra
 
 at pp. 976-977 analyzes whether the relevant transactions fall within the ambit of article 9 of the U.C.C. as enacted in California, Cal.Com.Code § 9101
 
 et seq.
 
 Both California and New York have enacted, with some variations not material here, the 1972 version of article 9 of the U.C.C. . Therefore, the analysis below applies with equal force to the relevant scope of article 9 as enacted in New York, N.Y.U.C.C. § 9-101
 
 et seq.
 

 [7]
 

 . Section 9-103(1) governs choice of law with respect to perfection of security interests in documents, instruments and ordinary goods. An “instrument" is defined in N.Y.U.C.C. § 9-105(l)(i) as follows:
 

 “Instrument” means a negotiable instrument (defined in Section 3-104), or a security (defined in Section 8-102) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment!)]
 

 Notes and deeds of trust constitute “instruments” within the meaning of § 9-105(l)(i).
 
 Starr v. Bruce Farley Corp. (In re Bruce Farley Corp.),
 
 612 F.2d 1197, 1199 (9th Cir. 1980) (construing the identical statutory provision in the California Commercial Code § 9105(l)(i)). Therefore, subsection (1) to § 9-103 is applicable to the instant case.
 

 [8]
 

 . Citations herein to “U.C.C.” refer to the 1972 Official Text of the Uniform Commercial Code and the Official Comments thereto.
 

 [9]
 

 . The January 17, 1975 assignment instrument provides in pertinent part:
 

 WHEREAS, Elkee Corporation, an Illinois corporation, is the payee and lawful holder of [the Cove note secured by the Cove deed of trust], and
 

 WHEREAS, Elkee Corporation is indebted to [First State] and further indebted to [Drovers];
 

 NOW, THEREFORE, for value received, Elkee Corporation assigns all of its right, title and interest in the [Cove note] first to [First State] until the principal amount of $280,000 plus any and all interest and other charges have been paid to [First State], and thereafter to [Drovers] to further secure the indebtedness of Elkee Corporation to [Drovers].
 

 [10]
 

 . Mercantile also relies on a deposition by Anthony Novacek, a First State officer who apparently processed the 1974 assignment. However, the deposition merely indicates that Mr. Novacek, a Vice-President — Loan Supervisor at First State, failed to comprehend the nature of the transactions leading up to this litigation. Mr. Novacek testified in that deposition as follows:
 

 To be honest with you, at the time this transaction transpired and to date it’s very confusing, to be honest with you; and I’m still confused about it, and I don’t really, honestly know what happened.
 

 [11]
 

 . This assignment, which purported to be the initial conveyance of a security interest in the Cove collateral, subsumed the 1974 assignment from Elkee to First State which had secured Elkee’s debts in the principal amount of $240,-000.
 

 [12]
 

 . This rule does not apply if the collateral consists of goods covered by a negotiable document. Cal.Com.Code § 9305.
 

 [13]
 

 . First State, in a letter from John Stevens, Assistant Cashier of First State, to Andrew Collins, Assistant Vice President of Drovers, confirmed to Drovers that First State possessed the Cove collateral and would, pursuant to instructions received from the pledgor Elkee, forward the Cove collateral to Drovers once all of Elkee’s obligations to First State were satisfied.
 

 [14]
 

 . The U.C.C. does not define “possession”. Hence, the common law principles governing possession for the purpose of perfecting a pledge interest are relevant to cases arising under the U.C.C.
 
 See
 
 U.C.C. § 9-205, Official Comment 6; Cal.Com.Code § 9305, California Code Comment 2. Accordingly, the court finds
 
 Gins,
 
 which arose prior to the enactment of the U.C.C., persuasive authority for the proposition stated in the text.
 

 [15]
 

 . The collateral was sold pursuant to a settlement agreement between FDIC-Drovers and Landmark with respect to an action commenced by Landmark to quiet title to the La Quinta property. The court deems this transfer of the Cove collateral to be a sale and not merely an assignment of a security interest, even though FDIC-Drovers also transferred to Landmark the underlying obligation owed by Elkee to Drovers, since the record establishes that Elkee was in default on this obligation prior to the transfer and that the parties intended the transaction to constitute a sale.