**In re REDDINGTON/SUNSTAR LIMIT-
ED PARTNERSHIP, Debtor.**

**The MERCHANTS BANK, Movant,**

v.

**REDDINGTON/SUNSTAR LIMITED
PARTNERSHIP and Union Planters
National Bank, Respondents.**

**Bankruptcy No. B–87–3197–PHX–SSC.
Adv. No. "B".**

United States Bankruptcy Court,
D. Arizona.

Dec. 27, 1988.

---

Peter J. Rathwell, Craig J. Bolton, Snell & Wilmer, Phoenix, Ariz., for The Merchants Bank.

Sidney Diamond, El Paso, Tex., James LaGanke, Phoenix, Ariz., for debtor.

Susan G. Boswell, John R. Clemency, Streich, Lang, Weeks & Cardon, Phoenix, Ariz., for Great American First Sav. Bank FSB, and The Merchants Bank.

James M. Marlar, Teilborg, Sanders & Parks, Phoenix, Ariz., for various limited partners.

Michael P. Lane, Bentley, Brandes & Brandes, Phoenix, Ariz., for various limited partners.

## MEMORANDUM DECISION AND ORDER VACATING THE STAY

SARAH SHARER CURLEY,
Bankruptcy Judge.

On June 17, 1988, The Merchants Bank filed its Motion to Vacate the Stay, and Motion for Turnover of Certain Proceeds. On July 5, 1988, the Debtor filed a Response, requesting a Final Hearing. On July 20, 1988, The Merchants Bank filed a Reply.

At a Preliminary Hearing before this Court on July 27, 1988, counsel for The Merchants Bank advised the Court that the interested parties had agreed that this Court might dispose of this matter through the utilization of legal briefs, with the Final Hearing to consist solely of oral argument. On August 15, 1988, the Debtor filed its memorandum in support of its position. On August 31, 1988, the Bank filed its reply memorandum. Debtor's counsel was unable to attend the Final Hearing scheduled for September 13, 1988. With the consent of the parties, the Hearing was held on September 22, 1988.

This Court has jurisdiction over this "core" proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

### FACTUAL DISCUSSION

On May 28, 1987, the Debtor filed its petition under Chapter 11 of the Bankruptcy Code. Without elaborating unduly, the Debtor had agreed that the automatic stay would be vacated as to its principal asset, the real property located at 1106 West Bell Road, Phoenix, Arizona, and another secured creditor might take appropriate action to foreclose upon that real property, if the Debtor did not commence its Confirmation Hearing on October 15, 1987.

Although the Confirmation Hearing did commence on October 15, 1987, and this Court issued an affirmative stay pursuant

to Section 105 of the Bankruptcy Code while the Hearing was being conducted, the Debtor was unable to confirm a plan, the Confirmation Hearing was concluded, the affirmative stay was rescinded, and the secured creditor foreclosed on the real property. All that remains is the sum of $100,000, over which the present dispute continues.

On or about December 20, 1985, the Debtor, Union Planters National Bank ("Union Planters"), in the capacity of Lender and Trustee, and The Merchants Bank entered into the Investor Note Agreement.

Apparently, both Union Planters and The Merchants Bank had entered into loan transactions with the Debtor.

Union Planters had requested that the Debtor assign and endorse certain notes, denominated "Investor Notes," to the Bank as security for the repayment of the indebtedness due and owing by the Debtor to the Bank.[1] The indebtedness due and owing to The Merchants Bank was also secured by these Investor Notes. However, Merchants Bank subordinated its indebtedness in all respects to that of Union Planters.

A branch of Union Planters agreed to serve as Trustee for both Banks. In fact, the Union Planters' Branch obtained possession of the Investor Notes, and has had them in its possession continuously thereafter.

The indebtedness of the Debtor to Merchants Bank is evidenced by a Promissory Note in the original principal amount of $100,000 dated September 18, 1986, and is secured by the Investor Notes as provided in the Pledge and Security Agreement, also dated September 18, 1986, both of which were filed with this Court on September 23, 1988. The Pledge and Security Agreement provides that the pledge of the Investor Notes is subordinate to the prior pledge of the Notes to Union Planters. The Agreement further provides on Pages 1 and 2:

> ... [Union Planters] has agreed to hold the Investor Notes ... for the benefit of [Merchants Bank].... [Merchants Bank] is relying on said arrangements and agreements to secure [its] Note.

Paragraphs 2 and 3, Pages 2 and 3, of the Pledge and Security Agreement further state:

> 2. As security for the above Obligations, Debtor hereby pledges to [Merchants Bank] the Investor Notes and grants to [Merchants Bank] a lien thereon and a security interest therein....
>
> 3. Debtor agrees that, while any balance remains outstanding under the [Union Planter's] Agreements, [Union Planter's] possession of the Investor Notes under said Agreements shall also constitute possession of the Investor Notes as a bailee for purposes of perfecting [Merchant's Bank's] pledge, lien and security interest under [applicable law].

In addition, pursuant to the terms of the Investor Note Agreement, the Trustee held the Notes in its possession as Agent for the Banks, and to perfect The Merchants Bank security interest in The Notes.[2] The Agreement further provides that The Merchants Bank is only to be paid from the proceeds of these Notes, if Union Planters has been paid in full.[3]

---

1. The Debtor obtained promissory notes from its limited partners, which were payable to the Debtor. In a frequently used financing arrangement, these notes were assigned by the Debtor to the Bank.

2. Paragraph 2 of the Recitals of the Investor Note Agreement provides as follows:

> 2. [Debtor] has pledged Investor Notes as collateral for indebtedness to [Merchants Bank] subject and in all respects subordinate to the pledging of the Investor Notes to [Union Planters]. [Union Planters] is acting as Agent for [Merchants Bank] in holding the Investor Notes and Bond to perfect [Merchants Bank's] Security Interest therein sub-

ject and in all respects subordinate to [Union Planter's] Security Interest therein.

3. Paragraph 3 of the Recitals and Paragraphs 3(b) and 3(c), Page 2 of the Investor Note Agreement provide:

> 3. The [Debtor], the [Merchants Bank], and the [Union Planters] are desirous of having the Trustee receive all payments to be made on the Investor Notes for the purpose of insuring that these amounts which are received are timely invested and applied against payments on the [Union Planter's] Loan with any excess amounts to be remitted to [Merchants Bank].

Union Planters apparently has now been paid in full, and currently holds the sum of $100,000 for distribution to the appropriate party.

The Debtor states that The Merchants Bank does not have a perfected security interest on the Investor Notes, or the proceeds thereof, and the sum of $100,000 must be returned to it.

## LEGAL ISSUES

(I.) The law of which State should be applied to the transaction.

(II.) Whether a senior lienholder with possession of the subject collateral may serve as the bailee for a junior lienholder, so that the junior lienholder may be determined to have a perfected security interest in the same collateral.

## DISCUSSION

A creditor with a secured claim, requesting to foreclose on its collateral in a motion to vacate the stay, does have an initial burden of going forward to indicate it has a valid, perfected security interest on certain property. 11 U.S.C. § 362(g)(1). The Bankruptcy Court must analyze the applicable State law to determine initially the validity of such a perfected security interest.

The Uniform Commercial Code has been adopted by every state except Louisiana. However, for purposes of this decision, the Court must initially determine which State law is applicable.

The Debtor alleges that The Merchants Bank does not have a perfected security interest in the Investor Notes. Since the question of perfection is at issue, this Court must review the conflict of laws provision concerning perfection under the Arizona *Uniform Commercial Code* as the first step in the process. Section 47–9103(A)(2) of the *Arizona Revised Statutes* provides that as to perfection of an "instrument," this Court should apply the law of the jurisdiction

> where the collateral is when the last event occurs on which is based the assertion that a security interest is perfected or unperfected.

Under the Arizona *Uniform Commercial Code*, an instrument is defined as:

> a negotiable instrument or a certified security or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment. A.R.S. § 47–9105(A)(11).

Such a definition is clearly applicable to the Investor Notes. The Investor Notes have been, and continue to be, held by the Union Planters branch in Tennessee. Therefore, the last event which has occurred upon which perfection or nonperfection is predicated is the receipt and retention of the Investor Notes in Tennessee. Moreover, the Investor Note Agreement executed by the Debtor, Union Planters, and The Merchants Bank provides that the law of the State of Tennessee shall control.[4] Finally, the State of Arizona does not have overriding public policy concerns which should

---

... 3.(b) Once the Trustee has delivered to [Union Planters] the entire amount due ..., the Trustee shall remit any amounts held in trust attributable to payments on Investor Notes ... to the [Merchants Bank]....

3.(c) If the Trustee has received written notice from [Union Planters] of the existence of a default under the terms of the [Union Planter's] Loan Agreement, the Trustee shall deliver all amounts received by it to the [Union Planters] not to exceed the total amount due under the Loan Agreement with any excess being distributed as provided in (b) above.

4. The Debtor is an Arizona limited partnership, but its general partners or principals are located in Texas. Therefore, the Debtor executed the relevant documents in Texas. The Merchants Bank is located in Missouri; and Union Planters in Tennessee. The multi-state nature of the transaction contemplated that the law of Tennessee might be applied. For instance, the bail-or-bailee provision of the Pledge and Security Agreement between the Debtor and The Merchants Bank states at Paragraph 3 that the law of the State of Missouri or "any equivalent provision of law which may be deemed applicable" shall apply. The Debtor and The Merchants Bank, therefore, contemplated that the three-party agreement with Union Planters might necessitate the law of a state other than Missouri being applied.

be considered that would require that the law of the State of Arizona be applied to this transaction. The law of Tennessee should be applied to determine whether The Merchants Bank has a perfected security interest in the Investor Notes.

Tennessee law provides that the Investor Notes are instruments. *Tenn.Code Ann.* § 47–9–103–(1)(b). A secured creditor, pursuant to Tennessee law, may perfect its security interest in instruments by possession without filing a financing statement. Moreover, a bailor-bailee transaction is an acceptable alternative. The statute provides:

> ... if such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest.... *Tenn.Code Ann.* § 47–9–305.

A search of the Tennessee case law indicates only one relevant decision.

In *In re King*, 10 B.R. 685 (E.D.Tenn. 1981), the Debtor purchased a trailer from a dealer, which assigned with full recourse the "Retail Installment Contract and Disclosure Statement" to Blount National Bank. The assignment provided that should the debtor default in payments, the dealer would repurchase the contract from the Bank, without regard as to who had possession of the trailer, and without the Bank being required to take any action to enforce collection or repossession. The trailer was subject to the applicable motor vehicle registration laws. However, through the inadvertence of the dealer, neither the name of the dealer nor the Bank was noted on the certificate of title for the trailer. The debtor returned the trailer to the dealer, requesting that the latter party sell the trailer. The debtor endorsed the certificate of title in blank to effectuate a sale. This action was voluntary by the debtor. The debtor continued to make payments to the Bank, and the Bank did not request the dealer repurchase the contract or take any steps to repossess the trailer

prior to the institution of the bankruptcy proceedings.

■ The Court held that the Bank in *King* had obtained a perfected security interest in the trailer as a result of the possession of the trailer by the dealer at the time of the filing of the bankruptcy petition. The Court relied on *In re Copeland*, 18 *UCC Rep.* 833, 843 (1976) that Section 9–305 of the *Uniform Commercial Code* permitted a party other than an "individual under the sole dominion and control of the secured party" to be a bailee. In *King*, the dealer had possession of the trailer and the certificate of title. *Id.*, at 687. This was apparently sufficient to create a bailor-bailee relationship, and to perfect the Bank's security interest in the trailer. Therefore, the dealer and the Bank were held under 11 U.S.C. § 544 to have superior interests in the vehicle over that of the Trustee. Therefore, it appears that as long as the bailee is not the debtor, or is not controlled by the debtor, the bailee under Tennessee law may be another secured creditor that has possession of the collateral.

Since the law of Tennessee is not particularly well-developed on the issue of whether a senior lienholder may possess collateral to perfect a junior lienholder's security interest in the same collateral, this Court shall also review and analyze the relevant case law of other jurisdictions. In the *Landmark Land Co., Inc. v. Sprague* decision,[5] from a Federal Court in the Southern District of New York, applying the substantive law of the State of California, similar issues were addressed. There a debtor had assigned numerous times its interest in a promissory note as security for the repayment of various obligations of the debtor. One secured creditor took possession of the promissory note at the time of the initial assignment, and remained in possession through subsequent assignments. *Id.* at 974. In discussing the bailor-bailee relationship, and the right of a junior lienholder to obtain a perfected security interest in an instrument, although the senior lienholder had possession, the Court stated:

5. 529 F.Supp. 971 (S.D.N.Y.1981).

The application of these principles to the facts of the instant case indicates that whether [the junior lienholder] had a perfected security interest in the [instrument] turns on whether [the senior lienholder], as the party with the senior security interest in the [collateral], possessed the [collateral] as the agent or bailee of [the junior lienholder] within the meaning of § 9305. Where, as in the instant case, the senior secured party in possession of the collateral acknowledges and accepts the instructions of the pledgor to deliver the collateral to the junior secured party after the debt to the senior secured party is satisfied, then the senior secured party is considered to possess the collateral as the agent or bailee of the junior secured party. *Id.* at 980.

On appeal, the United States Court of Appeals for the Second Circuit reversed the District Court Judge, and remanded the matter back to him, because the lower court had determined that the legal issues should be disposed of by summary judgment. Although the Second Circuit did not quarrel with the Judge's application of the law, it concluded that genuine issues of material fact existed that made the granting of summary judgment improvident. *Landmark Land Co. Inc. v. Sprague,* 701 F.2d 1065, 1068 (2d Cir.1983). Therefore, the District Court decision still has some precedential effect.

In the case before this Court, the Debtor, The Merchants Bank, and Union Planters executed the Investor Note Agreement, which constituted the necessary instruction from the Debtor, as pledgor of the Investor Notes, to the senior lienholder to deliver the Investor Notes, or their proceeds, to The Merchants Bank, the junior lienholder, once Union Planters was paid in full. In this case, Union Planters, pursuant to this Agreement and its actions in compliance therewith, was serving as the agent or bailee of The Merchants Bank. The Promissory Note and the Pledge and Security Agreement solely between the Debtor and The Merchants Bank also contemplate that

Union Planters would act as such an agent or bailee.

In analyzing the case law of the Ninth Circuit, none of the decisions are dispositive of the issues before this Court.

In *Heinicke Instruments Co. v. Republic Corp.,*[6] Mr. Block, the then president and director of Heinicke Instruments Company, had purchased stock of the corporation through a new private offering. *Before the issuance of the stock,* Mr. Block had proceeded to assign the stock to another individual, a Mr. Bergman, who had made a loan to Mr. Block. Mr. Block then resigned as president and director of the corporation, and Mr. Bergman proceeded to assign his interest in the Block stock to yet another party, a bank. Although Heinicke Instruments Company acknowledged each assignment, it continued to act on the instructions of Mr. Block. On the date the stock was issued, the corporation received a writ of attachment concerning any assets of Mr. Block in the corporation's possession. Mr. Bergman (and, by implication, his assignee) argued that he had a prior perfected security interest over that of the attaching creditor because Heinicke Instruments Company held the newly issued stock as bailee for Mr. Bergman pursuant to Section 9–305 of the Uniform Commercial Code. In making its determination that no bailment existed between the corporation and Mr. Bergman, or any subsequent assignee, the Ninth Circuit stated that no transfer of possession or delivery of the certificate (to be held according to the purpose or object of the delivery, and to be returned when the purpose or object had been fulfilled) had occurred. Fleeting possession by the corporation, with no instructions, was insufficient. Moreover, given the close relationship between the corporation and its former president and director, no effective notice to third-party creditors of the transfer of Mr. Block's interest could ever be given. Therefore, Heinicke Instruments Company could not serve as a bailee for Mr. Bergman. Final-

---

**6.** 543 F.2d 700 (9th Cir.1976). See also *Matter of Staff Mortg. & Inv. Corp.,* 550 F.2d 1228 (9th Cir.1977), which follows *Heinicke; In re Bruce*

*Farley Corp.,* 612 F.2d 1197 (9th Cir.1980); and *In re Staff Mortg. & Inv. Corp.,* 625 F.2d 281 (9th Cir.1980).

ly, there was no evidence that Mr. Bergman, or his assignee, had ever requested the corporation to act as agent, or in any other capacity, for Mr. Bergman or his assignee.

The facts before this Court are quite different. Here the third party, Union Planters, specifically agreed to serve as bailee for The Merchants Bank pursuant to the instructions set forth in the Investor Note Agreement. There was also delivery of the collateral by the Debtor to the bailee pursuant to the bailment. The agreement between the parties as to the *priority* of the various perfected security interests in and to the collateral did not destroy the bailment.

The Debtor has relied, in part, on *In re Coral Petroleum, Inc.*, 50 B.R. 830 (Bankr. S.D.Tex.1985), for the proposition that a senior lienholder may not serve as a bailee for the junior lienholder, and, therefore, that The Merchants Bank does not have a perfected security interest in the Investor Notes. However, a close reading of the *Coral* decision reveals that the debtor and the Chicago Bank had agreed on September 17, 1982, that the third-party note, an asset of the debtor's, be pledged by the debtor as security for the loan received from the Chicago Bank. The pledged note was delivered to the Bank pursuant to this agreement. *Id.* at 832–833. Although the debtor had entered into a loan transaction with the predecessor to Banque Paribas on July 31, 1981, and two other loan transactions with Banque Paribas on August 30, 1982 and January 27, 1983, the debtor never executed a document which stated that the excess funds from the pledged note would be "specific security" for any of the loans. *Id.* at 833. More importantly, Banque Paribas never entered into a written agency agreement with the Chicago Bank, requesting that the Chicago Bank serve as agent or bailee for Banque Paribas as to the pledged note. *Id.* at 834. The Intercreditor Agreement entered into by several creditors, including Banque Paribas and the Chicago Bank, reinforced the necessity of such a bailment agreement by stating that a creditor with a "specific security interest" in certain collateral (which the

Chicago Bank had in the pledged note) would have priority over creditors with a general security interest in the same collateral. It was only just prior to the sale of the pledged note to the Chicago Bank, and on the eve of the debtor filing its bankruptcy petition, that Banque Paribas sent a telex to the Chicago Bank, informing the latter party that Banque Paribas had an interest in the pledged note. Id. at 835. In determining whether Banque Paribas and another bank, MBank, had any interest in the pledged note, the Court reviewed the applicable law to the transaction, that of Illinois, and stated:

> Article 9 of the Uniform Commercial Code has no definition of a 'bailee,' therefore, pursuant to U.C.C. § 1–103 this Court will look to common law principles for the definition.... Under Illinois law, 'a bailment is the delivery of goods for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled they shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept till he reclaims them.' [Citations omitted.] A bailment is a consensual relationship that can be established by express contract or implication.... An implied-in-fact bailment is determined by the surrounding facts such as benefits received by the parties, the parties intentions, the kind of property involved and the opportunity of each party to exercise control over the property.... Id. at 839.

This definition of bailment is not dissimilar from that employed according to Tennessee law, which this Court is utilizing in this decision. However, in *Coral,* the Court had no express bailment, which this Court concludes existed here, because of the Investor Note Agreement and other loan documentation. In *Coral,* the Court had to make the far more difficult decision of whether oral notification and the telex between Banque Paribas and the Chicago Bank created the more tangential *implied* bailment. The Court stated that there was insufficient evidence to reflect such an *implied* bailment. Therefore, the language in *Coral* relied on by the Debtor herein that a

bailee should be a third party that does not assert an interest in the bailed property refers to *implied* bailments. Although the Court in *Coral* states, as *dicta,* rather broad language that an interested lienholder, including a senior perfected security interest holder, cannot serve as a bailee for a junior perfected security interest holder, it did acknowledge that a specific agreement by a junior lienholder to hold pledged collateral subject to a senior lienholder was permissible. The rationale was that if a creditor inquired of the junior lienholder, it would also learn of the senior lienholder's interest as a result of the agreement entered into between the junior and senior lienholder. *Id.* at 840. This Court, as a result of the Investor Note Agreement entered into between the Debtor, the senior lienholder and the junior lienholder, finds the same rationale applicable here, that is, appropriate notice of another party's interest in the collateral, is fulfilled even though the senior lienholder, Union Planters, retains possession of the collateral.

Although *In re Rolain,* 823 F.2d 198 (8th Cir.1987), cites *Coral* with favor, *Rolain* considered whether *debtor's counsel* might ever be a suitable bailee. One of the factors relied on by the Court was that debtor's counsel had no interest in the collateral. The Court stated, (1) that all parties had agreed to the arrangement, and (2) that possession of the collateral by debtor's counsel would fulfill the notice function required by Section 9–305 of the *Uniform Commercial Code. Id.* at 200. These two critical factors are certainly present in the factual scenario presented to this Court.

The commercial realities of the marketplace also dictate this Court's decision. It would be unreasonable and commercially impossible to expect a bank located in Tennessee, having already obtained possession of investor notes from third parties as security for a prior indebtedness of an Arizona partnership, whose principals are located in El Paso, Texas, to surrender possession of the investor notes to a *junior* lienholder, located in Missouri, as security for a subsequent indebtedness.

The impossibility of such a surrender of collateral may be further predicated on the relative financial strengths or control of the marketplace of the respective financial institutions. All financial institutions are not created equal. Therefore, this Court should consider in its conclusions that in multi-state transactions or transactions involving financial institutions of disproportionate financial strength or control of the marketplace, it is unlikely that certain junior lienholders shall be able to wrest control of the collateral from the senior lienholders.

Based upon the foregoing analysis, this Court concludes that The Merchants Bank has a perfected security interest in the Investor Notes.

IT IS ORDERED that the automatic stay be vacated, and that The Merchants Bank may pursue its rights and remedies under applicable State law to foreclose its security interest on the Investor Notes.

The foregoing constitutes findings of fact and conclusions of law pursuant to *Bankruptcy Rule* 7052.